760 So.2d 641 (2000)
Victor C. BENWARE
v.
Jesse MEANS, Jr. and Lloyds Under Writers at London
No. 98 CA 0203R.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
Rehearing Denied June 23, 2000.
*643 James R. Clary, Jr., Baton Rouge, for Plaintiff-Appellee Victor C. Benware.
Jesse L. Means, Jr., St. Francisville, Pro Se.
Stephen R. Wilson, Baton Rouge, for Third Party Defendant-Appellee Daniel K. Willis.
Before: FOIL, WHIPPLE, and GUIDRY, JJ.
GUIDRY, J.
In this legal malpractice action, appellant, Jesse L. Means, Jr., appeals the trial court's judgment. Pursuant to the judgment, Victor C. Benware (Mr. Benware) was awarded damages against appellant and appellant's third party demand against Daniel K. Willis (Mr. Willis) was dismissed.

FACTS AND PROCEDURAL HISTORY
Mr. Benware was injured while in the course and scope of his employment as a prison guard at Louisiana State Penitentiary, Angola, Louisiana, on March 27, 1982. While attempting to stop a fight between two inmates, Mr. Benware was kicked in the right leg by one of the inmates. The injury aggravated a pre-existing varicose vein condition, which rendered Mr. Benware partially disabled.
Following his injury, the State of Louisiana paid workers' compensation benefits to him from the date of the accident through March 18, 1983. Believing he was still entitled to receive benefits, Mr. Benware hired appellant as his attorney to prosecute a workers' compensation claim against the State.
After being retained by Mr. Benware, appellant filed a lawsuit against the Louisiana Department of Corrections (the Department) and the State of Louisiana on behalf of Mr. Benware on August 24, 1983. On November 2, 1983, the Department and the State filed an answer to the petition. On June 7, 1988, Henry D. Salassi, Jr., enrolled as counsel for the Department and the State. On June 28, 1988, Mr. Salassi filed interrogatories, and on July 13, 1988, Mr. Salassi filed a notice of deposition. No pleadings, other than the original petition, were filed by appellant.
Because of his difficulty in reaching appellant to discuss his case, Mr. Benware asked another attorney, Mr. Willis, to ask appellant about the status of the case. Mr. Benware also suggested that Mr. Willis assist appellant with the case.
On August 19, 1993, counsel for the Department and the State filed a motion to dismiss the action for want of prosecution. A judgment, dismissing the workers' compensation suit with prejudice at Mr. Benware's cost for want of prosecution for a period of five years, was signed on September 10, 1993.
On July 8, 1994, Mr. Benware filed a petition for damages against appellant and his professional liability insurer, Lloyd's Underwriters at London. In the petition, Mr. Benware alleged that he engaged appellant as his attorney in a workers' compensation matter, and that after filing a petition for damages on behalf of Mr. Benware, appellant failed to take any action on *644 the matter for five years, causing the lawsuit to be dismissed as abandoned. Mr. Benware further alleged that because of appellant's failure to prosecute the workers' compensation claim, Mr. Benware lost the right to recover workers' compensation benefits, including the remaining 121 weeks of payments (of the 175 weeks of payments he claimed he was entitled to receive), possible attorney's fees and penalties (if the State's failure to pay the benefits was arbitrary and capricious), and any additional unpaid medical expenses.
On November 9, 1994, Alan Edward Clare, individually and as representative underwriter on behalf of those certain Underwriters at Lloyd's, London (Lloyd's), filed an answer, generally denying the allegations of the petition, and filed a crossclaim against appellant, alleging that Lloyd's did not insure appellant for any act or omission by him pre-dating October 1, 1993. On November 14, 1994, appellant answered Mr. Benware's petition, generally denying the allegations. On December 22, 1994, appellant answered the cross-claim and filed a third party demand against Lloyd's.[1] On January 8, 1996, appellant filed a third party demand against Mr. Willis. On June 21, 1996, Mr. Willis answered the third party demand, generally denying the allegations.
A status conference was held on July 29, 1996. Appellant was not present at this conference. On August 12, 1996, the trial court issued an order setting forth the deadlines by which the parties must file all motions, complete discovery, amend pleadings, and circulate and sign the pretrial order. More specifically, the order required that all pretrial inserts be exchanged by November 8, 1996. On December 17, 1996, counsel for Mr. Benware submitted the pretrial order to the trial court without any pretrial inserts from appellant because appellant had not provided opposing counsel with this information. The pretrial inserts of each party were to contain each party's contentions, exhibit list, witness list, and any other relevant matters.
On February 7, 1997, counsel for Mr. Benware and Mr. Willis filed a motion to circumscribe the calling of witnesses and introduction of evidence by appellant. The motion was heard on March 31, 1997, the day of the trial, and the trial court rendered judgment on the motion in open court. Pursuant to the judgment, the motion was granted, and appellant was prohibited from maintaining any defense contentions, introducing any evidence, or calling any witnesses at the trial of the matter. After a trial on the merits, judgment was rendered and signed by the trial court on September 25, 1997. Judgment was in favor of Mr. Benware and against appellant in the amount of $50,000.00. There was also judgment in favor of Mr. Willis against appellant, dismissing appellant's third party demand with prejudice.
Appellant appealed the decision to this court and we reversed the trial court's ruling on the motion to circumscribe, reversed the judgment of the trial court on the merits, and remanded the matter for a new trial. Benware v. Means, 98-0203, p. 8 (La.App. 1st Cir.2/23/99), 738 So.2d 204 (unpublished opinion). However, Mr. Benware applied to the Louisiana Supreme Court for writs, and the supreme court granted the writ application. Benware v. Means, 99-1410 (La.9/17/99), 747 So.2d 554. The supreme court reinstated the trial court's judgment on the motion to circumscribe, set aside our judgment vacating the trial court's decision on the merits, and remanded the case for us to review the judgment on the merits. Benware v. Means, 99-1410, p. 14 (La.1/19/00), 752 So.2d 841, 849.

*645 ASSIGNMENTS OF ERROR
The issues raised by appellant regarding the sanctions imposed and conduct of the trial without prior notice were disposed of by the supreme court. Thus, the following issues regarding the trial remain to be addressed by us: 1) whether the medical evidence submitted in the case supports a cause of action in the workers' compensation case that Mr. Benware must prove in the legal malpractice case; 2) whether Mr. Benware's failure to follow recommended medical treatment was unreasonable and limited any benefits to which he was entitled to a period of twenty-six weeks; 3) whether Mr. Benware's stipulation as to the value of his claim being $49,999.99 was binding on the trial court, and whether the trial court should have applied any credit due appellant against $49,999.99; 4) whether the trial court's finding that Mr. Benware's income during the period of disability was $23,017.00 is arbitrary, and whether the trial court erred in not requiring of Mr. Benware adequate evidence as to the nature and extent of his income; and 5) whether the trial court erred in allowing Mr. Benware, over appellant's objection, to expand the pleadings without filing an amended and supplemental petition in writing.

DISCUSSION

Motion to Substitute Parties Plaintiff
During oral argument of this matter, we were informed by counsel for Mr. Benware that he died during the pendency of this appeal. Thereafter, a motion to substitute parties plaintiff was filed by Victoria Benware Leet (Victoria) and Leon Joseph Benware, II (Leon). Asserting that they are the lawful children and heirs, they moved to be substituted and, pursuant to La. C.C.P. art. 801, attached the "Certificate of Death" and "Judgment of Possession" recognizing them as the sole heirs of Mr. Benware and putting them in possession of the property belonging to the succession as proof of their quality. This motion was referred to the merits.
We cannot render a judgment for or against a deceased person, as such is an absolute nullity. Carr v. Hibernia National Bank, 95-1342, p. 1 (La.App. 1st Cir.9/25/98), 720 So.2d 81, 82, writ not considered, 98-2246 (La.11/13/98), 730 So.2d 451, reconsideration not considered, 98-2246 (La.1/15/99), 735 So.2d 645. We do, however, when a motion is properly filed, have the authority to substitute a party when a party dies during the pendency of an appeal as set forth in the Uniform Rules for the Louisiana Courts of Appeal. See La. C.C.P. art. 821.[2] The Uniform Rules for the Louisiana Courts of Appeal provide that "[t]he rules and procedures for substitution of parties provided in LSA-C.C.P. Arts. 801-807 shall regulate the substitution of parties." Uniform Rules, Courts of Appeal, Rule 2-9. La. C.C.P. art. 801 provides that:
When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion supported by proof of his quality.
As used in Articles 801 through 804, "legal successor" means:
(1) The survivors designated in Article 2315.1 of the Civil Code, if the action survives in their favor; and
(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein.
The documents attached to the motion to substitute demonstrate that Victoria and Leon are the legal successors of Mr. Benware *646 pursuant to La. C.C. art. 2315.1.[3] Thus, the motion to substitute is granted.

Standard of ReviewDe Novo
On appeal, appellant challenges the trial court's determination that Mr. Benware's income during his period of disability was $23,017.00 as arbitrary. We agree. Furthermore, we conclude that a de novo review of this case is required because of a misapplication of the law by the trial court.
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Insurance Co., 94-1252, p. 7 (La.2/20/95), 650 So.2d 742, 747. As the Louisiana Supreme Court explained in Evans v. Lungrin, 97-0541, 97-0577, p. 7 (La.2/6/98), 708 So.2d 731, 735:
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. (Citations omitted)
Under the 1982 version of La. R.S. 23:1221(3), which is the provision applicable to Mr. Benware's claim, the trial court was required to calculate 66 2/3% of the difference between Mr. Benware's pre-injury and post-injury wages. This was the weekly amount to which Mr. Benware would have been entitled to receive. Instead, the trial court simply determined that Mr. Benware was entitled to receive the maximum weekly rate of compensation, $183.00,[4] for 399 weeks (450 weeks less the 51 weeks during which Mr. Benware received benefits), and then deducted $23,017.00 in earnings from the total.[5]
Therefore, the trial court erred as a matter of law in its calculation of the benefits to which Mr. Benware was entitled and in allowing a credit for Mr. Benware's income during the period of his disability in the amount of $23,017.00. Accordingly, we must review the present case de novo.

Enlargement of Pleadings
Before reviewing the case de novo, we address the question of whether the pleadings were enlarged by allowing evidence regarding the period of Mr. Benware's disability and the number of weeks for which Mr. Benware was entitled to receive benefits.
In his petition for damages, Mr. Benware alleged that he "was entitled to damages for the permanent partial disability of his leg or sixty-six and two-thirds percent *647 (66 2/3%) of his weekly wages for a maximum of one hundred seventy-five (175) weeks." At trial, during the testimony of Mr. Benware regarding income he received from the operation of his gun shop and, again, during the testimony of Mr. Benware's expert witness, Nicholas Canaday, III, regarding the maximum compensation duration for permanent partial disability, appellant objected to the testimony as an attempt to expand the pleadings. Over this objection, the trial court allowed the testimony to proceed and ultimately determined that, had the workers' compensation case been litigated, the court would have found Mr. Benware to be "permanently and partially disabled as a result of the injuries received in his accident occurring in the course and scope of his employment with the State of Louisiana on March 27, 1982." In light of this determination, the trial court concluded that under the workers' compensation law in 1982, the year of the disabling injury, Mr. Benware would have been entitled to receive benefits for a period of 450 weeks at the maximum compensation rate of $183.00. Appellant now asserts that the trial court erroneously allowed testimony in evidence, over his objection, that expanded the pleadings and that the trial court's damage award was in error.
A judgment rendered beyond the pleadings is a nullity. Stephens v. Stephens, 30,498, p. 3 (La.App.2d Cir.5/13/98), 714 So.2d 115, 117; Havener v. Havener, 29,785, p. 2 (La.App.2d Cir.8/20/97), 700 So.2d 533, 535. The trial judge has great discretion to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings and to determine whether evidence is encompassed by the general issues raised in the pleadings. Herrell v. Herrell, 594 So.2d 943, 946 (La.App. 3d Cir.1992).
A timely objection, coupled with the failure to move for an amendment of the pleadings is fatal to an issue not raised in the pleadings. Havener, 29,785 at 3, 700 So.2d at 535. If the evidence is admissible on the issues properly pleaded, the pleadings are not enlarged by its admission. Id. Furthermore, La. C.C.P. art. 862 grants the trial court authority to render a final judgment granting the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. Stephens, 30,498 at 3, 714 So.2d at 117.
We do not believe the trial court was in error in allowing the testimony regarding the time period for which Mr. Benware was entitled to benefits. Likewise, we do not believe it was error for the trial court to determine that Mr. Benware was entitled to 450 weeks of benefits. Clearly, this case centered around the issue of whether Mr. Benware was entitled to benefits on the basis of permanent partial disability. Although the petition states an incorrect time period, it expressly alleges that Mr. Benware is entitled to damages for his "permanent partial disability."
In addition, appellant failed to show any prejudice by the admission of the evidence. See Herrell, 594 So.2d at 946. The petition gave appellant notice that Mr. Benware was claiming damages related to appellant's failure to prosecute Mr. Benware's permanent partial disability claim. Furthermore, appellant, as Mr. Benware's attorney in the workers' compensation claim, had ample notice of the basis of Mr. Benware's legal malpractice claim. Therefore, we find no abuse of discretion by the trial court in allowing evidence regarding the 450-week maximum compensation duration for permanent partial disability.
Thus, we now review the entire record, including all the evidence presented at trial, applying the de novo standard.

Workers' Compensation Law Applicable to this Case
An employee may be deemed partially disabled if he is unable to perform the same duties in which he was customarily engaged, or duties of the same or similar character for which he is fitted by *648 education, training or experience. La. R.S. 23:1221(3).[6] A claimant may be considered partially disabled under Section 1221(3) when his work-related injury prevents him from performing significant physical tasks which are required by his employer and important to the effective performance of his work. Connelly v. Buck Kreihs Company, Inc., 463 So.2d 725, 728 (La.App. 4th Cir.1985).
In his petition for damages, Mr. Benware alleged and sought to prove at trial that he is permanently partially disabled as the result of his 1982 on-the-job injury. After the injury, Mr. Benware received compensation benefits for approximately 51 weeks. Thereafter, his benefits were terminated, and a workers' compensation action was filed on his behalf. This claim was governed by the law at the time the accident occurred.
In 1982, La. R.S. 23:1221(3) allowed an employee who suffers a partial disability to recover 66 2/3% of the difference between the wages he was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages. The maximum time period for which the claimant could recover such benefits was 450 weeks. The maximum amount of benefits for partial disability for Mr. Benware was $183.00 per week.
Prior to his injury, Mr. Benware's average wages were $596.77 twice a month or approximately $298.39 per week. According to Mr. Benware, after the injury he looked for employment but no one would hire him. He then opened a gun shop. When he opened the shop, his intent was to receive a weekly salary of $100.00. However, according to Mr. Benware, he rarely collected a salary because the business was not making enough money to pay him. According to Mr. Benware, his average annual wages from the gun shop were below $4,000.00. Yet, he received $100.00 for the weeks that he did receive wages. None of Mr. Benware's testimony was contradicted by appellant. Thus, we conclude that, had he not stipulated that his damages did not exceed $50,000.00, Mr. Benware would be entitled to damages in the amount of $52,775.73.[7]
Appellant argues that Mr. Benware failed to prove his entitlement to workers' compensation benefits, which is a necessary element in proving legal malpractice.[8] Additionally, appellant argues that Mr. Benware's unreasonable failure to follow recommended medical treatment limited any benefits Mr. Benware could recover to a period of 26 weeks.[9]
An attorney is negligent if he accepts employment and fails to assert timely *649 a viable claim or causes a loss of opportunity to assert a claim for recovery: "[O]nce the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit." Finkelstein v. Collier, 93-999, p. 7 (La.App. 5th Cir.4/14/94), 636 So.2d 1053, 1058 (quoting Jenkins v. St. Paul Fire & Marine Insurance Company, 422 So.2d 1109, 1110 (La. 1982)). Clearly, in this case, Mr. Benware established a prima facie case in showing that a claim on his behalf had been filed by appellant, that appellant failed to prosecute the claim, and that the claim was viable, particularly in light of the fact that his employer had attempted to settle the matter.
Furthermore, the record supports the conclusion that Mr. Benware had a valid claim against his employer. Mr. Benware's treating physician, Dr. Kent Martin, testified in his deposition (taken in the underlying workers' compensation case) that although Mr. Benware's objective signs and symptoms of the injury had resolved a year after the accident, Mr. Benware continued to complain of severe pain that would keep him from returning to work. While Dr. Martin acknowledged that he would not have "tolerated this" in a normal individual and would have insisted that such individual return to work, he could not issue such an order in Mr. Benware's case because Mr. Benware "already had severe morbidity from his other medical problems, if he said he had pain so severe that he couldn't work, [Dr. Martin] didn't feel that [he] could ignore that." The expert legal testimony of Mr. Canaday and the testimony of Henry D. Salassi, Jr., the former attorney for Mr. Benware's employer, further bolster Mr. Benware's case and adequately prove Mr. Benware's entitlement to compensation.
Appellant's argument that Mr. Benware failed to follow recommended medical treatment is based on a recommendation by Dr. Martin and Dr. Sheely, a specialist referred by Dr. Martin, that Mr. Benware wear Jobst support stockings and that he lose weight. We, however, do not believe that Mr. Benware's failure to wear the stockings was unreasonable. According to Mr. Benware, the stockings were so painful that he could not bear to wear them. Furthermore, Dr. Martin testified that he was not very hopeful that the stockings would be effective because Mr. Benware's legs were so large.
As to the weight loss recommendation, Dr. Martin also did not believe this alternative was possible. Likewise, Mr. Benware testified that he was unable to lose weight because he could not tolerate much usage of his leg. Thus, he was unable to exercise. Accordingly, Mr. Benware's failure to lose weight was not unreasonable.

Stipulation of Damages
On August 20, 1996, Mr. Benware stipulated that the value of his claim against appellant did not exceed $49,999.99 and asked that the request for a jury trial be dismissed. In light of this stipulation, appellant argues that it was error for the trial court to determine that Mr. Benware was entitled to $73,017.00 in damages, which was then reduced to $50,000.00 based on a credit in favor of appellant in the amount of $23,017.00 for earnings by Mr. Benware. We agree.
A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stevens v. Winn-Dixie of Louisiana, 95-0435, pp. 7-8 (La.App. 1st Cir.11/9/95), 664 So.2d 1207, 1212. Stipulations between the parties are binding on the trial court when not in derogation of law. Bullock v. Graham, 96-0711, p. 4 (La.11/1/96), 681 So.2d 1248, 1250. Moreover, it is well settled that procedural maneuvers designed solely to deprive litigants of their right to a jury trial based on jurisdictional amounts are disfavored. Bullock, 96-0711 at 4, 681 So.2d at 1250.
In the present case, it is clear from the stipulation by Mr. Benware that the primary motivation for stipulating that *650 his damages were less than $50,000.00 was to avoid a jury trial. Furthermore, it is clear that the stipulation was as to the total value of his claim, and not limited to the amount he could ultimately recover. See Robling v. Allstate Insurance Company, 97-0582, p. 12 (La.App. 1st Cir.4/8/98), 711 So.2d 780, 787; Triche v. Allstate Insurance Company, 96-0575, pp. 7-8 (La. App. 1st Cir.12/20/96), 686 So.2d 127, 131-132. Thus, although we have concluded that absent a stipulation to the contrary Mr. Benware would be entitled to damages in the amount of $52,775.73, those damages must be reduced to the stipulated amount of $49,999.99, with legal interest thereon, from the date of judicial demand until paid.

CONCLUSION
For the foregoing reasons, Victoria Benware Leet and Leon Joseph Benware, II, are substituted as parties plaintiff as the legal successors of Victor C. Benware, and the trial court's judgment is amended to reduce the damage award from $50,000.00 to $49,999.99. All costs of this appeal are assessed to appellant, Jesse L. Means, Jr.
MOTION GRANTED. JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Lloyd's filed a motion for summary judgment, which was denied by the trial court. However, Lloyd's applied for supervisory and remedial writs with this court. This court granted the writ and reversed the trial court's denial of the motion for summary judgment. Accordingly, Lloyd's is no longer a party to this suit.
[2] La. C.C.P. art. 821 provides, in pertinent part: "The substitution of parties in an action pending in the supreme court or in a court of appeal is governed by the rules of the appellate court."
[3] La. C.C. art. 2315.1 provides, in pertinent part:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
[4] See La. R.S. 23:1202. Subpart (B) of this statute provides that "the average weekly wage paid in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the Louisiana Employment Security Law[.]" This information may be obtained by contacting the State Department of Labor, Office of Workers' Compensation Administration.
[5] We note that we find no evidentiary basis in the record to support the trial court's conclusion that Mr. Benware earned $23,017 .00. The uncontradicted testimony of Mr. Benware was that his post-injury weekly wages were $100.00, whenever he was able to collect those wages. He also testified that his average annual wages were below $4,000.00.
[6] Acts 1975, No. 583, § 9, eff. Sept. 1, 1975. This provision, however, has since undergone substantial revision, which may have caused Mr. Benware's counsel to incorrectly calculate the time period for which Mr. Benware was entitled to receive benefits.
[7] This dollar amount is obtained by subtracting $100.00 per week (post-injury wages) from $298.39 per week (pre-injury wages) and reducing the difference ($198.39) to 662 2/3 or $132.27. This amount is then multiplied by the number of weeks (399) for which Mr. Benware would have been entitled to receive benefits.
[8] There are three elements to a legal malpractice claim: (1) the existence of an attorney-client relationship, (2) negligent representation by the attorney, and (3) loss to the client caused by that negligence. Francois v. Reed, 97-1328, p. 4 (La.App. 1st Cir.5/15/98), 714 So.2d 228, 229-230. Thus, to assert a claim for legal malpractice, a client must demonstrate that there was an attorney-client relationship, that the attorney was guilty of negligence or professional impropriety in the relationship with the client, and that the attorney's misconduct caused the client some loss. Burris v. Vinet, 95-0668, p. 6 (La.App. 1st Cir.11/9/95), 664 So.2d 1225, 1229.
[9] La. R.S. 23:1221(4)(q)(iii) limits compensation to a period not to exceed 26 weeks when an employee refuses to submit to recommended treatment and the employee fails to prove by a preponderance of the evidence that his refusal is based upon a conscientious religious objection or that the treatment involves an unusual and serious danger to him.