782 So.2d 1133 (2001)
Craig BAUER
v.
Byrne W. DYER, III, et al.
No. 00-CA-1778.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
Writ Denied May 25, 2001.
*1134 Mark D. Kuss, Alejandro Gonzalez, Gonzalez & Kuss, New Orleans, Counsel for Craig A. Bauer, Plaintiff-Appellant.
William E. Wright, Jr., Ambrose V. McCall, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, Counsel for Byrne W. Dyer, III, Defendant-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
CHEHARDY, Judge.
This is a legal malpractice suit in which plaintiff appeals a summary judgment dismissing his claim on the basis that he could not have won the underlying litigation. We affirm.

FACTS
Underlying this legal malpractice suit are six complaints filed by Craig Bauer *1135 protesting job actions taken against him by the Jefferson Parish Department of Personnel. The following facts are adduced from the Statement of Material Facts filed in support of the motion for summary judgment and from exhibits filed in connection with the motion.
In August 1982 Craig Bauer began working for the Jefferson Parish Department of Juvenile Services as an Educational Specialist I. In March 1986, Bauer filled the newly-created position of Education Specialist IV. His main job duty was supervision of all educational and academic programming provided by the Jefferson Parish Juvenile Court Services at Butler, Rivarde and Banneker schools. In addition, Bauer's job description as Education Specialist IV provided that he would serve as "Educational Supervisor to all Juvenile Court Services staff in the classifications of Educational Specialist III, II, I, Vocational Specialists III, II, I, Creative Arts Specialists III, II, I, Recreational Specialist III, II, I, all Instructors and all site Special Ed Teachers provided through contractual agreement with Jefferson Parish School Board."
At one time during 1985, Bauer supervised as many as 18 classified service personnel working in the positions of Educational Specialist, Vocational Specialist and Recreational Specialist. At some time thereafter, however, Banneker School was closed and in 1990 Butler School was closed. Bauer's remaining supervisory duty concerned one employee, who educated teachers assigned to Rivarde School.
On or about August 4, 1992, Bauer's function of evaluating the Rivarde teachers was re-assigned to another employee. As a result of the closing of Butler School and the reassignment of Bauer's duties at Rivarde, as of August 4, 1992 Bauer's principal job duties as an Educational Specialist IV ceased to exist.
After August 4, 1992 Bauer's remaining work duties included running the Day Reporting Centers (DRC) and writing grant applications. Neither of Bauer's two remaining work duties are listed or described in Bauer's job description as an Educational Specialist IV.
Under the Jefferson Parish Personnel Rules, an employee has 30 days to file an administrative appeal contesting actions of the appointing authority. Bauer did not file an administrative appeal within 30 days of the August 4, 1992 transfer of the remaining educational duties listed in his job description.
On or about April 6, 1994 Bauer's noneducational DRC duties were reassigned to another employee.
On May 4, 1994, Bauer made the first of his six administrative appeals to the Personnel Board. In Jefferson Parish Personnel Board Appeal No.1994-17, Bauer complained that on April 6, 1994 his job duties were "radically changed" by reallocation, in contravention of the Personnel Rules. He sought reinstatement of his supervisory responsibility over all Juvenile Services education programs (despite the fact that by August 1992 he had lost his educational supervisory and management duties and was no longer performing tasks as set forth in the Educational Specialist IV job description, due to his August 1992 reassignment and the 1990 closure of the Butler School.)
In his second appeal to the Personnel Board (Appeal No.1994-24), filed on June 27, 1994, Bauer stated that on May 30, 1994 he had received a letter from the Personnel Department advising him that his classification was no longer functional and that a new classification was needed. He sought to have the Personnel Board confirm the existence of a Juvenile Services education program and the viability *1136 of the Educational Specialist IV position. (At the time of his reclassification the three schools at which he had supervision had either been closed or had ceased to operate under his supervision. The number of employees he supervised had decreased from 18 to zero.)
In both of his first two administrative appeals Bauer listed his attorney as Roderick C. Patrick.
Following the April 6, 1994 transfer of Bauer's non-educational DRC duties, the Department of Personnel performed a job study to evaluate whether Bauer was still performing the job duties and functions associated with the position of Educational Specialist IV. In response to the study, Bauer submitted documentation of his job duties, in which he admitted that his primary job duty was writing grant applications. The Personnel Department found that Bauer no longer functioned as an Education Specialist IV and that he should be reclassified.
Subsequently the Personnel Department created a new job with the title "Grants Research Writer."
In four additional administrative appeals, filed in August 1994 and thereafter, Bauer designated Byrne W. Dyer, defendant herein, as his attorney. In those four appeals Bauer complained of adverse employment actions that all flowed from or occurred as a result of his 1992 reassignment and prior loss of job duties resulting from the 1990 closure of Butler School.
In Jefferson Parish Personnel Board Appeal No.1994-31, filed on August 29, 1994, he complained, "The Personnel Director determined to reallocate my position improperly, ignoring relevant facts, improper actions of my appointing authority, and the responsibilities set by my classification." He requested that the Personnel Board reverse or refuse to approve that reallocation, and confirm the authority of his classified position to supervise parish-wide all education and academic programming and staff.
In Appeal No.1994-41, filed on October 28, 1994, he complained that he had been docked leave time and compensation in violation of regulations. He sought reinstatement of his leave time and to "stop the Director from harassing [him] during the pendency of [his] appeals."
In Appeal No.1995-23, filed on March 17, 1995, he complained that the appointing authority failed to provide written reasons for a pay raise denial. He sought to be granted an annual pay increase retroactive to his eligibility date.
Bauer had applied for the new position of Grants Research Writer, but was not accepted. His former job of Educational Specialist IV no longer existed and he no longer had a job, so his employment by the Jefferson Parish Juvenile Services Department ceased. He was terminated in June 1995 on the basis of reduction in force.
In Appeal No.1995-53, filed on June 26, 1995, he complained that he had been fired on June 16, 1995. He requested reinstatement and payment of all pay and leave time.
Bauer's appeals to the Personnel Board were consolidated and were tried in multiple hearings over various days. On November 6, 1996 the Personnel Board entered its written decision, in which it maintained the actions of the appointing authority, found that the actions of the Department of Personnel were appropriate, and dismissed Bauer's multiple appeals.
The Personnel Board held that Bauer's remaining job duties as an Educational Specialist IV were reassigned on August 4, 1992 and that Bauer acquiesced in the reassignment of his remaining job duties *1137 by failing to file the first of his six administrative appeals until 21 months after August 4, 1992, so that his appeal was untimely. The Board found further that the decision reallocating the position of Educational Specialist IV was performed in good faith and was required by Jefferson Parish Personnel Rules, that the request for reduction in force was made in good faith, and that the granting of the reduction in force was in good faith and was required by the Personnel Rules.
On December 13, 1996 Dyer filed a notice of appeal of Bauer's claims. On January 15, 1997 the Personnel Board issued a notice stating that failure to pay the appeal costs of $4,586.50 within 20 days of the date of the notice would result in dismissal of the appeal. On April 22, 1997, the Personnel Board dismissed Bauer's appeal for failure to advance any costs whatsoever.
On June 16, 1997 Dyer filed a motion for rehearing, which the Personnel Board denied on June 25, 1997.
On September 23, 1998 Bauer filed suit against Dyer and Dyer's malpractice insurance carrier, alleging that he retained Dyer on or about August 19, 1994 to represent him in employment-related matters against the Parish of Jefferson. Bauer asserted that Dyer committed legal malpractice and/or breach of contract and negligence through failure to perfect a timely appeal of his case from the Personnel Board, failure to make timely payment of the costs of appeal after a notice of appeal had been filed, failure to inform Bauer of deadlines involving appeals, failure to protect Bauer's interests, failure to exercise the requisite care in handling Bauer's claim and causing his claim to be dismissed, untimely filing of any appeals, failure to act on the appellate decision, and failure to collect the docked wages due Bauer in settlement of one of his claims.
Bauer alleged that he sent Dyer a check for the appeal costs, but that Dyer failed to pay the costs and failed to refund the funds to Bauer. Bauer further alleged that Dyer had filed suit on his behalf seeking production of certain information related to his claims, which was dismissed by the district court, then on appeal was reversed and remanded for a hearing under the Louisiana Public Records Law.[1] Bauer complained that despite repeated requests Dyer neither acted on the judgment nor attempted to recover docked wages awarded to Bauer in settlement of one of his claims.
In his answer Dyer admitted that Bauer sent him a $5,000.00 check on July 28, 1997, but asserted that he returned the check to Bauer because it was drawn to the order of the Personnel Board rather than to Dyer. Dyer stated that he filed four appeals with the Personnel Board on Bauer's behalf, as well as a notice of appeal that was not perfected because Bauer refused to pay costs associated with the proceeding.
Dyer further stated that he successfully pursued an appeal of Bauer's public records lawsuit and filed supervisory writs in other proceedings.[2]
Dyer admitted that Bauer requested him to pursue the judgment that was rendered on or about June 7, 1996, but he informed Bauer that he would not do so without a written contract. Dyer denied *1138 that he recovered an award of Bauer's wages as alleged by Bauer. Instead, Dyer asserted, the Jefferson Parish Department of Juvenile Services agreed that Bauer would be paid wages for the time he spent examining his personnel record (nine hours) and, in exchange, Bauer agreed to drop that specific appeal. Dyer admitted he has not attempted to recover the wages, but alleged that Bauer and his current counsel may pursue such recovery.
Dyer raised several affirmative defenses. He alleged that Bauer's claims before the Personnel Board had prescribed well before Dyer ever was consulted by or represented Bauer. He also contended that Bauer's recovery, if any, should be reduced by Bauer's comparative fault and contributory negligence in acquiescing to reassignment of his job duties for 21 months before filing his initial appeal on May 5, 1994, failing to pursue his still-pending claims and lawsuits with his new counsel, and personally refusing and rejecting reasonable settlement offers.
Subsequently Dyer filed a motion for summary judgment. He sought dismissal of the suit on the ground that the original claim upon which the administrative appeals were based was untimely and that the subsequent appeals failed as a matter of substantive law rather than through any negligence by Dyer.
In support of the motion for summary judgment, Dyer argued that it is essential to Bauer's legal malpractice claim that he sustained some type of damage that would not have occurred but for the negligence of Dyer. Dyer asserted, however, that the record of the underlying case shows the decision adverse to Bauer would never have been reversed on appeal. Thus, Dyer contended, even if he was negligent in failing to timely perfect an appeal, such negligence did not cause Bauer damage because Bauer cannot prove the appeal would have resulted in a favorable decision. Thus, Bauer cannot prove Dyer committed malpractice.
In addition, Dyer argued, Bauer's present legal malpractice action is subject to summary judgment because Bauer has no substantive evidence or legal authority compelling a reversal on the grounds that his reallocation was not in good faith.
Further, with respect to Bauer's claim that Dyer committed malpractice in failing to further pursue his separate public records suit after the favorable appeal, Dyer asserted that by the time the hearings took place before the Personnel Board, he and Bauer had determined there were no more discoverable records available. He contended "the prosecution of said lawsuit has remained a matter entirely within the control of Bauer."
Dyer filed an affidavit in support of the motion for summary judgment in which he stated, inter alia, that he began representing Craig Bauer on or about August 1994, approximately two years after Bauer was reassigned in August 1992. Dyer further stated that he represented Bauer during the multiple-day hearing of Bauer's consolidated administrative appeals before the Personnel Board. Finally, Dyer asserted that Bauer failed or refused to pay the necessary record of appeal costs required to prosecute an appeal of the November 6, 1996 decision issued by the Personnel Board.
In an affidavit in opposition to summary judgment, Bauer made the following statements: He retained Dyer's legal services in August 1994 to represent him in all employment-related issues regarding his employment with the Department of Juvenile Services and his appeals to the Personnel Board. On numerous occasions Dyer informed him that he had great confidence in Bauer's case before the Personnel *1139 Board and, should an adverse result be had, that Dyer had reserved numerous issues for appeal to the court of appeal. Dyer communicated to Bauer that he was confident of a favorable result on appeal. Dyer stated that the estimated cost of the preparation of the transcript and appeal of his case with the Personnel Board was excessive, that Dyer only wanted the actual testimony of the witnesses transcribed and not the entire transcript, and that such a request was permitted under district court rules.
Bauer further averred that Dyer never requested payment for the estimated costs of the appeal from Bauer prior to the July 23, 1997 correspondence. On July 28, 1997 Bauer forwarded to Dyer a check for the estimated fee for preparation of the transcript, in the amount of $5,000.00, as requested. On numerous occasions prior to the dismissal of his appeal, Bauer informed Dyer that he had the necessary funds available to pay for an appeal. Dyer did not pay the estimated costs of appeal.
Bauer stated further that on numerous occasions he requested, both orally and in writing, that Dyer preserve his appeal rights. Finally, Bauer stated that he relied at all times on the legal expertise and advice of his attorney, Dyer.
In response to Requests for Admission propounded by Dyer, Bauer admitted he received the January 15, 1997 order from the Personnel Board, which directed that he remit within 20 days the estimated transcript fee of $4,586.50 and which advised that failure to pay the costs required within the time specified would constitute grounds for dismissal of the appeal as abandoned. He denied that he had failed to pay the fee, but asserted he was advised by Dyer that Dyer was obtaining clarification from the Personnel Board on the amount demanded for the transcript and that Dyer was requesting only partial transcription of the proceedings, desiring only the testimony. Bauer also asserted that Dyer advised him that there would be a hearing before the board issued any formal order of dismissal and that payment could be made any time prior to the hearing. Bauer also denied Dyer's assertion that Bauer did not pay the estimated fee for the transcript; he asserted that, on Dyer's advice, he had no direct contact with the Personnel Board, but left all contact to be made through his attorney, Dyer. Further, when Dyer informed him that payment should be sent to him, Bauer sent payment to Dyer by certified mail for forwarding to the Personnel Board.
Bauer also denied Dyer's request that he admit he still had not obtained the transcript of the proceedings; Bauer asserted that he made no direct contact with the Personnel Board on advice of Dyer. He also asserted that he made repeated efforts to find out from Dyer whether the transcript had been received, but Dyer never responded.
On September 7, 2000 the trial court granted summary judgment in favor of defendant Dyer. The court incorporated reasons for judgment in its ruling, holding that Bauer failed to establish he would have obtained appellate relief if the costs of appeal had been timely paid. The court found that it was "very unlikely" Bauer would have obtained a favorable verdict and that Dyer had no duty to pay the fees and costs for securing the appeal on behalf of Bauer. The court noted that Bauer's assertion that Dyer's letter of July 23, 1997 was the only request he received for payment of transcript costs is contradicted by Bauer's admission that he received the January 15, 1997 order from the Personnel Board requiring payment of transcript preparation costs of $4,586.50 within 20 days.
*1140 The court concluded, "Notwithstanding the timeliness of the notice of appeal and the failure to pay the costs involved with said appeal, the fact that the original claim upon which the appeal was based had prescribed before Mr. Dyer's involvement is significant."
Bauer has appealed. On appeal Bauer contends, in effect, that there is a material issue of fact as to his responsibility to pay the appeal costs, because he was relying on Dyer's advice that he was seeking clarification of the appeal cost estimate, that in essence Dyer told him not to pay the transcript fee.

LAW
Summary judgments are reviewed de novo on appeal. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750.
A genuine issue is a triable issue. Smith, supra, at 751. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). On motion for summary judgment, whether or not a genuine issue of material fact exists is based on whether a fact whose existence or nonexistence may be essential to the cause of action under the applicable theory of recovery, i.e., one that would matter on the trial of the merits. Smith, supra, at 751.
An attorney is liable to his client for the damages caused by the attorney's negligence in handling the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. Toomer v. Breaux, 146 So.2d 723, 726 (La.App. 3rd Cir.1962), and cases cited therein. Thus, when a client sued his attorney for damages because of the alleged mishandling of litigation (either by reason of negligence or because of the attorney's failure to follow the client's instructions), the general rule was that the client bore the burden of proving that the attorney's neglect was the proximate cause of the client's loss, which ordinarily required the client to prove by a preponderance of the evidence that, except for the neglect shown by the attorney, the litigation would have resulted in a decision more favorable to the client. Toomer, 146 So.2d at 727. This was known as the "case within a case" approach to legal malpractice litigation.
In Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109 (La.1982), our supreme court modified the case-within-a-case rule by shifting the burden:
When the plaintiff ... proves that negligence on the part of his former attorney has caused the loss of the opportunity to assert a claim and thus establishes the inference of causation of damages resulting from the lost opportunity for recovery, an appellate court... must determine whether the negligent attorney met his burden of producing sufficient proof to overcome plaintiffs prima facie case.
422 So.2d at 1110.
An attorney is negligent if he accepts employment and fails to assert timely a viable claim or causes a loss of opportunity to assert a claim for recovery. Benware v. Means, 98-0203 (La.App. 1 *1141 Cir. 5/12/00), 760 So.2d 641, 648-649, writ denied, 00-2215 (La.10/27/00), 772 So.2d. 650.
[O]nce the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit.
Finkelstein v. Collier, 93-999, p. 7 (La. App. 5th Cir.4/14/94), 636 So.2d 1053, 1058.
"The proper method of determining whether an attorney's malpractice is a cause in fact of damage to his client is whether the performance of that act would have prevented the damage." Ault v. Bradley, 564 So.2d 374, 379 (La.App. 1 Cir.), writ denied, 569 So.2d 967 (La.1990).
In this case it is clear that under the applicable personnel rule plaintiffs initial claim was untimely, because it was made long past 30 days after the date of the initial job action that resulted in the other actionsthat is, the August 4, 1992 transfer of Bauer's job duties at Rivarde School to another employee.[3] Thus, plaintiff could not have reversed the ruling of the Personnel Board on appeal and any negligence by his attorney in failing to perfect the appeal is not the cause of his damage.
Plaintiff's factual statements go beyond asserted neglect in perfecting the appeal. His statements are that Dyer continued the case, which he knew could not be won, by assuring plaintiff that there was a good chance of success on appeal. In effect, these allegations are that Dyer persuaded him to continue litigation that Dyer now says was hopeless.
In deposition Dyer stated that he and Bauer discussed the possible untimeliness of Bauer's personnel claims, but that they decided to pursue them because it was unclear whether they were untimely. Dyer also said he and Bauer discussed anticipated problems in pursuing the claims, both legal and strategic. His statements are supported by copies of letters he wrote to Bauer. Bauer failed to show that he could produce contradictory facts.
It appears, thus, that Bauer decided to pursue the personnel board appeals yet was aware they were not certain of success. Considering the grounds set out in the Personnel Board's ruling dismissing Bauer's claims, it is clear that any damage he sustained was not caused by Dyer's possible failure to perfect the appeals.
We find no error in the trial court's ruling. Dyer established there was no genuine issue of material fact and that he was entitled to judgment as a matter of law.
Accordingly, the judgment is affirmed. Appellant is cast for costs of this appeal.
AFFIRMED.
NOTES
[1] Bauer v. Schwegmann, 96-112 (La.App. 5 Cir. 6/7/96), 676 So.2d 1096.
[2] Bauer v. Schwegmanm (appeal), cited supra note 1; Bauer v. Jefferson Parish Dept. of Juvenile Services, 95-333 (La.App. 5 Cir. 4/27/95) and 96-228 (La.App.3/14/96) (writ applications).
[3] "Appeals to the Board must be filed with and received by the Personnel Department... within thirty (30) calendar days of the effective date of the action complained against." [Emphasis in original.] Jefferson Parish Department of Personnel Rules, Ordinance No. 11741 (8/1/74), Rule II, Section 4.5, amended 11/15/86, Ordinance 17073.