806 So.2d 743 (2001)
ELMWOOD MRI, LTD.
v.
PARACELSUS PIONEER VALLEY HOSPITAL, INC., Paracelsus Healthcare Corporation, and Pioneer Valley Hospital, Inc.
No. 01-CA-764.
Court of Appeal of Louisiana, Fifth Circuit.
December 26, 2001.
*744 Kyle Schoenkas, Joelle F. Evans, Marie Marks, New Orleans, LA, Attorneys for Appellant.
Daniel A. Ranson, B. Wesley Pitts, Gretna, LA, Attorneys for Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiff Elmwood MRI (EMRI) appeals a summary judgment in favor of defendants Paracelsus Healthcare Corporation (PHC) and Paracelsus Pioneer Valley Hospital Inc. (Paracelsus Pioneer). Defendant/cross claimant Pioneer Valley Hospital Inc. (Pioneer Valley) also filed an appeal of the portion of the summary judgment which dismissed its cross claim against PHC and Paracelsus Pioneer. The case concerns the eviction of EMRI from the premises of the former Elmwood Medical Center (Elmwood). We affirm.
AHP of New Orleans (AHP) owned the land and buildings used in the operation of Elmwood. In January of 1992, EMRI entered into an agreement with Elmwood to provide MRI services to Elmwood patients at a reduced fee. This agreement had a term of 120 months. Pursuant to this agreement, the Hospital granted EMRI permission to park and operate an MRI mobile unit on a concrete pad adjacent to Elmwood at no expense to EMRI. EMRI was granted an exclusive right to provide MRI services. The 1992 agreement also contained a "Fixed-site" option which gave EMRI the option to install and operated a fixed-site MRI machine in the medical office *745 building adjoining the Hospital for a five-year period. EMRI exercised this option, and in December, 1992, the parties executed a services agreement with a term of 72 months. Under this agreement, Elmwood agreed to provide EMRI a concrete pad, at no expense to Elmwood MRI, upon which EMRI could place a modular building to house its MRI operation. The agreement also required Elmwood to provide EMRI, at no charge, suitable office space in the medical building, paid utilities, clerical support staff, and phone services. EMRI avers that it spent more than $1,000,000.00 acquiring and installing a new MRI system.
Elmwood Care Inc. (Elmwood Care) became the successor to Elmwood. On January 21, 1993, Elmwood Care and defendant Paracelsus Healthcare Corporation (PHC) executed an Asset Purchase Agreement. On the following day, January 22, 1993, (PHC) formed a subsidiary corporation, Paracelsus Elmwood Medical Center Inc. (PEMC) to acquire the assets of and to operate the hospital. The closing date of the Asset Purchase Agreement was March 1, 1993, and on that date PEMC acquired certain assets of Elmwood Care. Pursuant to Section 2 of the Asset Purchase Agreement, PEMC agreed to assume certain contract liabilities of Elmwood Care, specifically those contracts listed on Schedule 1.1(e). That portion of the contract listed an "oral lease for Suite 302, Tenant is Elmwood MRI" as one of the liabilities. The Services Agreement originally between EMRI and Elmwood was not included in the list of contracts assumed by PEMC. A separate Assignment and Assumption Agreement was executed by PEMC, under which PEMC agreed that the only contract liabilities of Elmwood Care which it would assume were those attached as Exhibit "A", a copy of Schedule 1.1(e).
On November 28, 1995, PEMC entered into an Asset Exchange Agreement with Pioneer Valley Hospital Inc. (Pioneer Valley) and Medical Center of Santa Rosa, Inc. (both subsidiaries of Columbia/HCA). Pursuant to this agreement, PEMC agreed to transfer to Pioneer Valley the assets used in connection with the operation of the hospital in exchange for a hospital owned and operated by Columbia. This exchange was subject to certain encumbrances defined as "Permitted Encumbrances". According to the Agreement, one of the Permitted Encumbrances was "the rights of parties in possession". To carry out the exchange, PEMC was merged into a newly formed corporation, Paracelsus Pioneer Valley Hospital Inc. (Paracelsus Pioneer). On May 14, 1996, Paracelsus Pioneer purchased the land, buildings, and improvements used in the operation of the hospital from AHP. On May 15, 1996, Paracelsus transferred the property it had acquired from AHP to Pioneer Valley. Paracelsus Pioneer agreed to transfer title to the hospital property, and Pioneer Valley agreed to accept same, without warranty of title and with certain encumbrances. Specifically, Pioneer Valley accepted the property subject to the "rights of tenants in possession as tenants".
Pioneer Valley began operating the hospital under the trade name Columbia Jefferson Medical Center. On December 31, 1996, Pioneer Valley closed the hospital. On March 27, 1997, Pioneer Valley's attorney notified EMRI that it was to be evicted. EMRI ceased its operations on October 24, 1997, fourteen months prior to the end of the term of the Agreement. EMRI vacated the premises and filed suit against Paracelsus Pioneer, PHC, and Pioneer Valley, alleging wrongful eviction and breach of contract. EMRI urged that each defendant assumed the obligations owed to it under the Services Agreement.
*746 Pioneer Valley filed cross-claims against PHC and Paracelsus Pioneer seeking damages for breach of title warranties. Pioneer Valley's claims are based on EMRI's occupancy of a portion of the hospital premises and medical office building at the time of, and subsequent to, Pioneer Valley's acquisition of the property. Pioneer Valley alleged that PHC and Paracelsus Pioneer warranted title to the property against EMRI's possession.
PHC and Paracelsus Pioneer filed a Motion For Summary Judgment which sought dismissal of all claims against them. Those parties urged that EMRI had failed to make a call in warranty or provide any notice of eviction to either of them prior to filing suit, and consequently, lost any right it might have had to seek damages from them. The Motion also alleged that Pioneer Valley accepted the hospital property subject to EMRI's right of use and occupancy with actual knowledge of EMRI's presence.
During pendency of the Motion, EMRI moved to dismiss PHC from the suit without prejudice following PHC's bankruptcy proceedings. The Motion was submitted on memoranda and was subsequently granted, dismissing PHC, and dismissing EMRI's claims against Paracelsus Pioneer. Pioneer Valley's cross claims against PHC and Pioneer Valley were also dismissed. EMRI and Pioneer Valley moved to appeal.
On appeal, EMRI argues that Paracelsus is not entitled to summary judgment as a matter of law, and that a question exists regarding whether a call in warranty was required under the circumstances of the case and whether Paracelsus breached the contract.
In its Reasons For Judgment, the trial court found as a matter of law that for EMRI to prevail in its wrongful eviction and breach of contract action for wrongful eviction, it must establish that it made a call in warranty upon PHC and Paracelsus Pioneer when Pioneer Valley required EMRI to vacate the hospital, i.e., when EMRI was "disturbed." The court found that the call in warranty is required pursuant to LSA-C.C. art. 2704, which article reads as follows:
Disturbance by third persons pretending to have rights; call in warranty
If the persons by whom those acts of disturbance have been committed, pretend to have a right to the thing leased, or if the lessee is cited to appear before a court of justice to answer to the complaint of the person thus claiming the whole or a part of the thing leased, or claiming some servitude on the same, he shall call the lessor in warranty, and shall be dismissed from the suit if he wishes it, by naming the person under whose rights he possesses.
The court held that under article 2704, the warrantor needs the opportunity to correct the disturbance before the eviction, as an insurer needs the opportunity to defend before being cast in judgment. It was found that EMRI admitted in discovery that it did not provide any notice to or any formal call in warranty on either PHC or Paracelsus Pioneer prior to vacating the premises. Therefore, the court reasoned, there were no genuine issues of material fact because EMRI was unable to meet its burden of proof at trial on this issue.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate.[1] An appellate court thus asks *747 the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law.[2] Although summary judgments are now favored, under La. C.C.P. art. 966 the mover must still show the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law.[3] A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery.[4] On motion for summary judgment, whether or not a genuine issue of material fact exists is based on whether a fact whose existence or nonexistence may be essential to the cause of action under the applicable theory of recovery, i.e., one that would matter on the trial of the merits.[5]
Under La.C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted.[6]
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial.[7]
Our examination of the record evidences that any action which EMRI may have against Paracelsus Pioneer flows directly from its eviction. EMRI argues, and the petition alleges, a breach of the Services Agreement by the defendants. EMRI states in brief that "despite initial compliance, Paracelsus ceased performing obligations owed to [EMRI] prior to expiration of the Agreement". However, the only factual allegation regarding a breach of obligations is that EMRI was prematurely evicted from the hospital premises. EMRI alleges that as a result of Paracelsus's breach of the Agreement, it lost its exclusive right to provide MRI services to the hospital and that those damages are unrelated to the eviction. This allegation is unsupported by the record. EMRI states in its Petition that the hospital paid it under a(new) fee schedule until it ceased operations in December of 1996. The record is also clear that the hospital closed several months before the notice of *748 eviction was sent to EMRI. The right to provide MRI services ceased when the hospital closed, and the determination by Pioneer Valley to close the hospital has not been shown to be related in any way to any action on the part of Paracelsus Pioneer.
The only action of EMRI against Paracelsus Pioneer is as an alleged lessor, for wrongful eviction, and the claimed damages arise from that eviction. We agree with the trial court that in order to prevail on these claims, a call in warranty or notice to Paracelsus Pioneer was required under C.C. art. 2704. Under LSA-C.C. art. 2692, the lessor is bound to maintain the thing in a condition such as to serve the use for which it was hired and to cause the lessee to be in peaceable possession of the thing during continuation of the lease. These are warranties implied in every contract of lease.[8] "Disturbances" as used in article 2704 refers to disturbances of the lessee's possession by third persons in the context of the lessor's implied contractual warranties of article 2692.[9]
EMRI argues that article 2704 is applicable only when the lessee is sued. However, a plain reading of the article indicates that it governs situations in which a lessee is cited to appear in court or when possession is disturbed by a person claiming a right in the premises. If a third person claims a right in the leased premises, a disturbance has occurred whether or not the lessee is sued.[10] There are very few cases on this issue, and none of recent origin. However, the Supreme Court has held that where a plaintiff as tenant gave no notice to a defendant lessor of any disturbance in her possession, and did not call the latter in warranty but abandoned the premises, the plaintiff consequently lost all right to claim damages from him.[11] We find this case to be controlling, and hold that the failure of EMRI to call in warranty, or notify Paracelsus Pioneer, prior to abandoning the premises and filing suit against it, compels summary judgment in favor of Paracelsus Pioneer.
EMRI alternately claims that the call in warranty is only required if a lessor proves he could have defeated the claim by the third party against his lessee. We find no support for this contention either in the applicable statute or in the jurisprudence. The case[12] cited by EMRI did not require that the lessor show he could have defeated the action, but rather considered that issue in the alternative.
There is no question of material fact that EMRI did not make the required call in warranty when its possession was disturbed by Pioneer Valley. Because such is a prerequisite to an action against a lessor under C.C. Art. 2704, Pioneer Valley was entitled to judgment as a matter of law.
Pioneer Valley has not filed a brief in these proceedings. Therefore, the judgment as to it, dismissing its claims, is affirmed.
For the foregoing reasons the judgment is affirmed. EMRI and Pioneer Valley are assessed their respective costs of this appeal.
AFFIRMED.
NOTES
[1] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Moody v. United Nat. Ins. Co., 98-287 (La.App. 5th Cir.9/29/98),743 So.2d 680; writ denied 98-2713, (La.12/18/98), 734 So.2d 639.
[2] Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191; Bauer v. Dyer, 00-1778 (La.App. 5th Cir.2/28/01), 782 So.2d 1133, writ denied XXXX-XXXX (La.5/25/01), 793 So.2d 162
[3] Nestor v. State Farm Mut. Auto. Ins. Co., 00-1515 (La.App. 5th Cir.12/27/00), 778 So.2d 89.
[4] Penalber v. Blount, 550 So.2d 577, 583 (La. 1989); Bauer v. Dyer, supra.
[5] Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750; Bauer v. Dyer, supra.
[6] See Johnson v. Drury, 99-1071 (La.App. 5th Cir.6/2/00), 763 So.2d 103; Davis v. Board of Sup'rs of Louisiana State University, 97-0382 (La.App. 4th Cir.3/18/98), 709 So.2d 1030, writ denied 98-1329 (La.6/26/98), 719 So.2d 1288.
[7] Davis v. Board of Sup'rs of Louisiana State University, supra; Townley v. City of Iowa, 97-493 (La.App. 3rd Cir.10/29/97), 702 So.2d 323, 326.
[8] Potter v. First Federal Sav. and Loan Ass'n of Scotlandville, 615 So.2d 318, (La.1993).
[9] Id.
[10] See e.g. Carmouche v. Jung, 157 La. 441, 102 So. 518 (1925).
[11] Id., citing Fox v. McKee, 31 La. Ann. 67 (La.1879). Also see Fasterling v. George, 13 La.App. 123, 127 So. 448 (1930).
[12] Fasterling v. George, supra.