FREDERICKA HOMBERG WICKER, Judge.
| ¡¿Plaintiff, Clifton Richardson, brings this appeal from a trial court judgment granting summary judgment to defendant Whitney National Bank (Whitney). The judgment further dismissed Mr. Richardson’s claims against Whitney and ordered him to pay $750.00 to Wdiitney in attorneys’ fees. Whitney filed an answer to the appeal in this Court, seeking an increase in attorneys’ fees. For reasons that follow, we affirm the judgment of the trial court as rendered.
The record before us shows that Mr. Richardson, appearing in proper person, filed a “Petition For Refund And Interest Including Damages Due to Petitioner,” in which he alleged that “Whitney took $22,818.37 from his account without authorization. The petition alleges that Mr. Richardson authorized Wdiitney to make a loan in the amount of $20,000.00 to Faye Hooker on February 25, 2004. Mr. Richardson asserts that the loan proceeds were to be taken from his deposit account, payable on October 25, 2004 at an interest rate of 9.5%. Mr. Richardson |aalso alleges he authorized Whitney to make a payment of $37,051.31 to Dean Morris on Mr. Richardson’s behalf to pay for a piece of property in Convent, Louisiana purchased at a sheriffs sale. Mr. Richardson asserts that after those two disbursements, his account balance should have been $22,818.37. For *837 reasons which are not clear from the petition, Mr. Richardson is demanding that Whitney replace that amount to his account.
Documents attached to the petition show that on February 25, 2004, Faye Hooker borrowed $20,000.00 from Mr. Richardson. The hand written contract further shows that the borrowed amount was to be paid back by October 25, 2004 at a rate of 9.5% interest from “funds generated from Teacher (sic) Retirement System of La.” Also attached to the petition is a statement from the Teachers’ Retirement System of Louisiana that shows that Ms. Hooker had a balance of $76,002.37 in her “DROP” account on December 1, 2003, and a disclosure statement showing that Ms. Hooker borrowed $20,000.00 from Whitney at an interest rate of 4.230% to be paid in one payment of $20,183.96 on April 21, 2004.
Whitney filed an exception of vagueness, which was granted by the trial court in a judgment that gave Mr. Richardson time to amend his petition. In response, Mr. Richardson filed a “Petition For Refund And Interest Including Damages Due To Petitioner For Fraud And Embezzlement By Whitney National Bank From Plaintiff Account,” in which Mr. Richardson alleged that Whitney embezzled $22,818.63 from his bank account.
Whitney filed an answer to the petition in which it asserted that it held a promissory note executed by Faye Hooker and Clifton Richardson dated February 25, 2004 in the original amount of $20,000.00. Further, Whitney asserted that Mr. Richardson executed an assignment of deposit account agreement, also dated February 25, 2004, wherein he pledged a certificate of deposit account as security |4for the note. Whitney maintained that, when the note matured, it exercised its option to accelerate the balance and to offset from the certificate of deposit in the amount complained of by Mr. Richardson in his petition. Whitney also made a reconven-tional demand against Mr. Richardson for filing a frivolous lawsuit, and a demand for contractual attorneys’ fees.
Mr. Richardson answered Whitney’s answer and attached certain documents, including the promissory note, the assignment of deposit account, and the disclosure statement from Whitney to Mr. Richardson. On all of the documents Mr. Richardson has handwritten notations indicating that the signatures on the documents are not genuine, but rather “fraud by Whitney National Bank.”
Whitney filed a motion for summary judgment on the merits of plaintiffs petition, and the reconventional demand for frivolous prosecution of a lawsuit. That motion was granted by the trial court, and is the subject of this appeal.
In support of it motion, Whitney attached documents, including an affidavit from Debra Lassere, the bank officer who handled Mr. Richardson’s transactions. The affidavit states that Mr. Richardson was a customer of Whitney, and maintained an $80,000.00 certificate of deposit with the bank. Whitney made a loan to Mr. Richardson and Ms. Hooker on February 25, 2004. Mr. Richardson agreed to pledge his certificate of deposit as consideration for the loan. A promissory note was signed in the amount of $20,083.82, which included the principal amount, credit life insurance and a documentation fee. At the closing Ms. Hooker and Mr. Richardson received a check for $20,000.00. That check was negotiated at Whitney and substituted for two cashier’s checks, one for $15,000.00 to Ms. Hooker and one for $5,000.00 to Mr. Richardson. Ms. Lassere further testified that the terms of the promissory note were that it was to be paid in one payment due on April 21, 2004. When the note was not timely paid, Ms. *838 Lassere | ^contacted both Ms. Hooker and Mr. Richardson and requested that they come into the bank to sign a renewal note. Mr. Richardson refused to do so and the note went into default. Thereafter, Whitney exercised its right of offset on the certificate of deposit, which by that time only had a balance of $20,088.93. That amount was applied to the loan and the remainder of indebtedness was forgiven.
Documents to support this testimony are attached to the motion, and include the promissory note, the disbursement request and authorization, two disclosure statements, the assignment of deposit account, and copies of the cashier’s checks. Whitney also provided several other affidavits attesting to the fact that both Mr. Richardson and Ms. Hooker signed all the documents in the presence of the affiants.
Whitney also presented the deposition of Faye Hooker. Ms. Hooker stated that she needed a loan to save her home, but could not qualify on her own because of her credit history. She asked her friend, Mr. Richardson, for help. Mr. Richardson agreed to lend her some money with the agreement that it would be repaid in one year with her “DROP” money. Ms. Hooker identified the signatures on the documents presented by Wdiitney as hers and Mr. Richardson’s, and admitted getting phone calls from the bank regarding the overdue payment on the loan. Ms. Hooker testified that she thought Mr. Richardson was lending her the money out of his account. She stated that she paid the money back to Mr. Richardson and she thought he would then put the money back into his account at Whitney.
Mr. Richardson did not file an opposition to the motion for summary judgment. In brief to this court, he repeats the allegations of his petitions and asserts that the signatures on the documents presented by Whitney are not authentic. Mr. Richardson offers nothing to support his claims.
|fiLa. C.C.P. art. 966 provides that a summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. Summary judgments are now favored in the law and the rules should be liberally applied. Nutt v. City of Gretna, 00-1864 00-1865 (La.App. 5 Cir. 5/16/01), 788 So.2d 617, 619. Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material issues of fact remain. Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, his response, by affidavits or as otherwise provided by law. The party must set forth specific facts showing that there is a genuine issue of material fact for trial. Elmwood MRI, Ltd. v. Paracelsus Pioneer Valley Hosp., 01-764 (La.App. 5 Cir. 12/26/01), 806 So.2d 743, 747.
Given the evidence presented to the trial court and the applicable law, we find that the trial court was correct in granting summary judgment in favor of Whitney on the merits of the embezzlement claim and we affirm that portion of the judgment.
Mr. Richardson also objected to the “word ‘frivolous’ to describe his case,” and argues the trial court erred in finding his petition to be frivolous. Mr. Richardson also assigns the award to Whitney of $750.00 in attorneys’ fees as error. Whitney has answered the appeal seeking an *839 increase in the award of attorneys’ fees to $6,599.05.
In its reconventional demand, “Whitney sought attorney fees under two theories, contractual and as a sanction for the filing of a frivolous lawsuit. In its ^motion for summary judgment, Whitney asked for a judgment on both the merits of Mr. Richardson’s petition and the issue of attorneys’ fees. The only evidence used to support the amount of attorneys’ fees requested was contained in the deposition of Ms. Lassere. That statement consisted only of a lump sum with no breakdown of the amount or supporting documents. As previously stated, Mr. Richardson did not oppose the motion for summary judgment on either issue.
This Court cannot determine from the record whether the trial court made the award as a sanction for filing a frivolous lawsuit, or as a result of a contractual obligation. The judgment does not make that clear, and the record contains no transcript of the hearing on the motion for summary judgment.
La. C.C.P. art. 863 allows an award of reasonable attorneys’ fees, after a hearing, when a party files a frivolous pleading. A trial court’s imposition of sanctions pursuant to La. C.C.P. art. 863 will not be reversed unless clearly wrong or manifestly erroneous. Alombro v. Alfortish, 02-1081 (La.App. 5 Cir. 4/29/03), 845 So.2d 1162, 1168; writ denied, 2003-1947 (La.10/31/03), 857 So.2d 486.
It is well established that attorneys’ fees can be a contractual obligation. Both the promissory note and the assignment of certificate of deposit contain clauses allowing attorneys’ fees. The promissory note contains the following language:
ATTORNEYS’ FEES; EXPENSES. If lender refers this Note to an attorney for collection, or files suit against me to collect this Note, or if I file for bankruptcy or other relief from creditors, I agree to pay Lender’s reasonable attorneys’ fees.
The assignment of deposit account contains the following clause:
ATTORNEYS’ FEES; EXPENSES. Grantor agrees to pay all of Lender’s costs and expenses, including Lender’s reasonable attorneys’ fees and Lender’s legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and the Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include ^Lender’s reasonable attorneys’ fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys’ fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.
Because it appears that the trial court followed the law pursuant to La. C.C.P. art. 863, and that Whitney did not present evidence sufficient to establish that the attorneys’ fees requested were “reasonable” in accordance with the above clauses in its contracts, we cannot find error in the trial court’s award of $750.00 in attorneys’ fees.
For the foregoing reasons, the judgment of the trial court is affirmed as rendered.
AFFIRMED.