830 So.2d 471 (2002)
Melony F. GASKIN, Plaintiff-Appellant,
v.
Timothy K. HENRY, Defendant-Appellee.
No. 36,714-CA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*472 George E. Lucas, Jr., Monroe, for Appellant.
*473 Kitchens, Benton, Kitchens and Newell, by: Paul E. Kitchens, Minden, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
BROWN, C.J.
This is a child custody dispute between Melony Fitzgerald Gaskin Pesnell ("Melony"), and Timothy Kyle Henry ("Kyle"), the parents of S.H.H. (d.o.b.03-05-97). Melony and Kyle never married, but lived together until some time in 1999.
On December 28, 1999, Melony filed a petition seeking joint custody of the couple's daughter, with her being designated primary domiciliary parent. Kyle filed an answer and reconventional demand, seeking his designation as primary domiciliary parent based upon his allegation that Melony was living in a state of open concubinage. On March 9, 2000, the parties entered into a stipulation resolving the issues of custody and child support. A judgment in accordance with the parties' agreement was filed on April 11, 2000.
On July 14, 2000, Melony filed a Petition for Domestic Abuse Protection, alleging that some improper sexual activity had taken place between Kyle and the child, who at the time was not quite 3½ years old. In support of her petition, Melony attached an affidavit executed by Dr. Bobby Stephenson, in which he opined that further inquiry into the allegations of sexual abuse was warranted and that supervised visitation should be implemented until such time as an investigation could be undertaken.[1]
Kyle filed a reconventional demand denying Melony's allegations and seeking primary custody of the child, again urging his objection to Melony's cohabitation with a man to whom she was not married. On August 7, 2000, an interim order was rendered appointing Dr. George Seiden and Dr. Susan Vigen, mental health professionals, to evaluate the child and restricting Kyle to supervised visitation.[2]
Trial was held on January 29 and 31, 2001. Oral reasons were rendered on January 31st and a written judgment was filed on March 6, 2001. In this judgment, the trial court found that there was insufficient evidence to conclude with any epistemological certainty that Kyle had exposed the child to sexually inappropriate behavior, but, considering that as a possibility, ordered that: supervised visitation be continued; the parties attend a "Children in the Middle" workshop; the parties and the child attend counseling; and there was to be no unsupervised contact between any male and the child until authorized or approved by a licensed mental health professional.[3] *474 The trial court set a review hearing for May 10, 2001.
At the May 10, 2001, review hearing, the trial court ordered Dr. E.H. Baker to evaluate Melony, Kyle and the child and to submit a written report to the court. The court further advised both attorneys to set a date for a review hearing following the court's receipt of Dr. Baker's report.
On November 13, 2001, George E. Lucas, Jr., enrolled as counsel for Melony. A telephone status conference was held on the afternoon of Tuesday, December 11, 2001. Counsel for both parties discussed the various issues, including the need for the setting of a date for a review hearing. The judge consulted with her secretary and determined that February 4, 2002, was available on her court calendar. According to Kyle's attorney, Paul Kitchens, the parties and the trial court agreed that the matter would be set for February 4, 2002. According to Melony's counsel, however, this date was never "formally" set on the court calendar by the filing of a motion and issuance of an order. Therefore, neither Melony nor her attorney appeared on that date. Kyle and his attorney, however, were present and the review hearing was held as scheduled.
A detailed judgment was rendered on February 4, 2002, which adopted the recommendations set forth in the written report of Dr. Baker which allowed for a graduated increase in Kyle's visitation with the child and ultimately provided for unsupervised visitation.[4] It is from this judgment that Melony has appealed.

Discussion
Melony's first assignment of error is that the trial court erred in conducting a review hearing on February 4, 2002, because it was neither formally placed on the docket nor was a written notice issued to counsel. Melony asks this court to reverse the trial court's February 4, 2002, judgment.
On the other hand, Kyle contends that counsel for appellant participated in the telephone conference during which the date was set for the review hearing and offered no objection to the court's setting the review hearing for February 4, 2002. Therefore, Melony and her attorney had actual notice of the hearing date and can not complain that the review hearing was held as scheduled.
In Benware v. Means, 99-1410 (La.01/19/00), 752 So.2d 841, on remand, 93-0203 (La.App. 1st Cir.05/12/00), 760 So.2d 641, writ denied, 00-2215 (La.10/27/00), 772 So.2d 650, a legal malpractice action arising out of workers' compensation proceedings, one of the issues addressed by the supreme court was appellant-attorney's complaint that he did not receive a formal notice of trial from the clerk of court. The supreme court noted that the local rules cited by appellant did not require formal notice of trial, but merely prescribed the usual procedure for obtaining a trial date. The paramount concern was that there be some form of notice of trial, which is of course a due process requirement.
*475 In Benware, supra, as in the instant case, there was no written notice of trial issued by the clerk of court's office. Nonetheless, as in the present case, the date for trial was mutually set by the other parties' attorneys and the trial judge. Unlike this case, however, appellant, who was representing himself, was not present at the status conference during which the trial date was set. Instead, he was informed of the trial date by opposing counsel.
The supreme court noted that the normal procedure for fixing a date for a trial or hearing was for a party to file a motion and the judge to select and fix the date. In that situation, formal notice of a trial date (not agreed upon by the attorneys) is clearly necessary. However, less formality is required when the parties themselves select a trial date, at least in the absence of prejudice to any party. Benware, supra at 849.
In this case, there is clearly no prejudice to Melony's attorney, who participated in the pre-trial conference during which the February 4, 2002, date was set. Inasmuch as he had actual notice that the review hearing had been set for that date, Melony's counsel can hardly complain that he was unaware that the matter was set for hearing on that date simply because he did not receive a written notification. While we appreciate his argument regarding his reason for not filing a motion/order to set a date for the review hearing (his client didn't like what Dr. Baker's report recommended and didn't want to have a review hearing because his client didn't want the child's father to have increased visitation with the child), we cannot discount the fact that both the trial court and Kyle's attorney came away from the pre-trial conference knowing that February 4, 2002, had been set for a review hearing.
At the beginning of the hearing on February 4, 2002, the trial judge stated the following:
Mr. Lucas ... or his client was dissatisfied with the report of Dr. E.H. Baker of Monroe, who interestingly was the subsequent mental health care provider that Ms. Gaskin pickedand the Court ... appointed Dr. Baker over the objections of Mr. Kitchens who represents Mr. Henry. And, as a result of Ms. Gaskin's dissatisfaction with Dr. Baker's report the Court and the two attorneys representing the parties, Mr. Kitchens and Mr. Lucas, had a status conference telephonically and this matter was set for review hearing on this date, February 4, 2002. No written order was submitted. The Court did not consider that necessary since the date was picked by agreement, and Mr. Lucas's secretary notified the Court that he was somewhere else today and would not be here today. That is not the Court's problem and therefore, I have elected to proceed today.
As noted by the supreme court in Benware, supra at 849, while the absence of a formal notice of trial may in many cases require corrective measures by a reviewing court, this is not such a case. An appellate court should intervene in regard to a trial court's control of trial court proceedings only upon a showing of an abuse of discretion. Pellerin v. Pellerin, 97-2085 (La.App. 4th Cir.06/17/98), 715 So.2d 617, writ denied, 98-1940 (La.10/30/98), 727 So.2d 1167. We find no abuse of discretion in the instant case. This assignment of error is meritless.
Melony next argues that the trial court erred in failing to find that the child was sexually abused by Kyle and in allowing Kyle unsupervised visitation. In support of this argument, appellant relies upon evidence introduced at the review *476 hearing held on January 29 and 31, 2001. According to Kyle, the judgment rendered following that hearing is final and therefore not appealable. He urges this court to look solely at the evidence presented at the February 4, 2002, hearing.
Contrary to Kyle's assertion, however, the January 31, 2001, judgment was interlocutory, not final, and therefore, Melony's appeal is proper and timely as to the entire case. See Mills v. Wilkerson, 34,694 (La.App.2d Cir.03/26/01), 785 So.2d 69; Sporl v. Sporl, 00-1321 (La.App. 5th Cir.05/30/01), 788 So.2d 682, writ denied, 01-1926 (La.10/12/01), 799 So.2d 506. Furthermore, at the beginning of the hearing on February 4, 2002, Kyle's attorney introduced into evidence the entire record, which necessarily includes the evidence introduced at the earlier hearing. Additionally, counsel introduced into evidence a supplemental report prepared by Dr. Baker on October 9, 2001, in which he noted some additional concerns Melony voiced to him.
A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La.C.C. art. 136; Evans v. Terrell, 27,615 (La.App.2d Cir.12/06/95), 665 So.2d 648, writ denied, 96-0387 (La.05/03/96), 672 So.2d 695, appeal after remand, 30,632 (La.App.2d Cir.06/24/98), 714 So.2d 914; Oglesby v. Oglesby, 25,974 (La.App.2d Cir.08/17/94), 641 So.2d 1027. The trial court has inherent power to determine a child's best interest and to tailor custody orders, including visitation, in a manner that minimizes risk of harm to the child. Id.
The question of visitation is always open to change when the conditions warrant it. Becnel v. Becnel, 98-593 (La. App. 5th Cir.03/25/99), 732 So.2d 589, writ denied, 99-1165 (La.06/04/99), 744 So.2d 630; Reynier v. Reynier, 545 So.2d 663 (La.App. 5th Cir.1989). Where there have been restrictions placed on a noncustodial's parent's visitation rights, those restrictions should be lifted when it is shown to be in the child's best interest. Id.
The trial court is vested with vast discretion in matters of child custody and visitation and the court's determination will not be disturbed absent a clear showing of abuse. Verret v. Verret, 34,982 (La.App.2d Cir.05/09/01), 786 So.2d 944; Hill v. Hill, 34,104 (La.App.2d Cir.01/24/01), 777 So.2d 1263. One important factor underlying the trial court's broad discretion in child custody cases is the trial court's better opportunity to evaluate the credibility of the witnesses. Hill, supra; Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993), writ denied, 620 So.2d 875 (La.1993).
The following is taken from the trial court's on-the-record questioning/discussion at the hearing held on February 4, 2002:
[Mr. Henry] ... you know that Dr. Vigen said she concluded that your daughter... had been exposed to inappropriate behavior of a sexual nature. You understand that. But, she did not conclude that that exposure was from you. And, you understand that the Court was left at that time with the inability to make a decision on the specific fact allegations, but it was Dr. Vigen who suggested that supervised visitation continue....
And then [Dr. Vigen] recommended further that further evaluation occur with another mental healthcare provider who would not have been hired specifically by a party....
And you understand that this child, just by having people ask her questions *477 about things parents don't normally discuss with a child of that age ... that she may be aware of things she would not necessarily be aware of. And, you understand that it's possible that these allegations will be raised against you in the future....
And anytime, I'm sure you understand, the Court hears allegations of this nature, the Court has to be very serious. You understand that? ... Now, I understand that you are willing to comply with an order as outlined by Dr. E.H. Baker in his letter of September 24, 2001, ... there would then be a period of time where your visitation would be slowly expanded because she hasn't been in your home for two years ... just to give [the child] the opportunity to slowly adjust to being in your home....
[T]hat's my obligation. It's not to take care of Mr. Henry, Ms. Gaskin, you [Mr. Henry's mother], but to determine what is in the best interest of this child....
I am of a strong belief that the best interest of this child is to put all this behind her. This child has been exposed to notions, ideas, behaviors, that children of her age should never even have cross their brain cells....
[T]he testimony indicated that [the child] had been exposed to inappropriate behaviors.... It did not indicate, from what I understand to be the best in the area [of child sexual abuse], who did what....
I would like any judgment to follow generally the kind of sliding increase that Dr. Baker recommended, although I do understand [the child] will be five in March and this delays the unsupervised visitations, but I still think it's appropriate to get her used to being back in with the Henry family. I understand that Dr. Baker has recommended continuing counseling for [the child] and I think that's probably appropriate, if for no other reason than because she has heard talk about things that really, frankly, are unspeakable. No matter what happens, she needs to be given the chance to purge, as much as possible, this from her cognition and [be] helped through that. So, I think Dr. Baker's recommendations are reasonable and I want those incorporated....
[After Dr. Baker's recommended visitation schedule is implemented], the Court will recognize the joint custody implementation plan that's effective between the parties.
When asked by the trial court whether he was opposed to the proposed visitation schedule, which required that his visits be supervised for five months, Kyle answered that he would do whatever it took to see his daughter, even if it bankrupted him. We are satisfied, as was the trial court, that Kyle has cooperated to the fullest extent with the restricted visitation and court-ordered counseling.
The trial court has discretion in tailoring visitation in a manner that minimizes the potential risk to the child. Evans, supra. The trial court found that visitation with her father was in the child's best interest and implemented Dr. Baker's recommendations, which provided for a gradual increase in Kyle's visitation with the child (which was to be supervised by his mother for five months) and continued counseling for the child. Having reviewed the record in its entirety, particularly the opinions of each evaluating mental health professional, we are unable to say that the trial court abused its discretion in this case.

Conclusion
For the reasons set forth above, the trial court's judgment is AFFIRMED. Costs *478 are assessed to plaintiff-appellant, Melony Fitzgerald Gaskin Pesnell.
NOTES
[1] During their one-hour interview, the child told Dr. Stephenson that her daddy put his "booty" in her face.
[2] Drs. Seiden and Vigen evaluated both parties and the child and noted in their report that the child was a highly verbal and controlling girl who was "highly resistant to following directions." They further noted that the child gave conflicting stories about her father's inappropriate behavior and on one occasion, reported that her 18-year-old half-brother had put his "booty" in her face. Soon thereafter, she recanted her accusations against both men. On subsequent sessions, however, the child made statements which raised significant concern.

Drs. Seiden and Vigen also noted that although there existed the possibility that the child had been subtly coached into making some of her statements, some of her statements did contain fairly detailed descriptions of sexual activity in age-appropriate language and her play directed anger toward the father figure. They were unable to conclude beyond a reasonable doubt that Kyle molested the child, however, and recommended further supervised visitation and counseling.
[3] The trial court also found Melony to be in contempt of previous court orders by continuing to have overnight visitations with her boyfriend, Dr. Greg Pesnell. As a result, Melony was prohibited from any contact with Dr. Pesnell while the child was with her. Kyle was also held in contempt for his failure to pay child support and was ordered to make his obligation current.
[4] Also in this judgment was a provision ordering that all previous reports/complaints of sexual abuse involving Kyle and the child be expunged from the records of the State Department of Social Services as well as those of the court.