978 So.2d 1156 (2008)
Jonathan Nicholas COOPER, Plaintiff-Appellee
v.
Tela Denise Dooly COOPER, Defendant-Appellant.
No. 43,244-CA.
Court of Appeal of Louisiana, Second Circuit.
March 12, 2008.
*1158 Klotz, Simmons, & Brainard, by B. Trey Morris, Cynthia L. Carroll, Shreveport, for Appellant.
Kitchens, Benton, Kitchens, & Black, by Melanie F. McCullough, Minden, for Appellee.
Before BROWN, PEATROSS, and DREW, JJ.
BROWN, Chief Judge.
Following a hearing on a rule to suspend visitation rights until the mother could provide adequate housing and sleeping arrangements, the trial court ruled that "[T]his mother's got no business having custody of these children at all. I'm going to terminate her visitation." The trial court then limited visitation to a three-hour supervised period every other Saturday. The mother appeals. For the reasons set forth below, we reverse and remand.

Facts and Procedural Background
Jonathan Nicholas Cooper and Tela Denise Dooly Cooper (now Hammett) were married in June 2001. Of this union, two girls were born, the first on November 3, 2001, and the second on August 16, 2003. Within a year of the second child's birth, Tela began having an affair with Joshua Hammett.
On January 30, 2006, Jonathan filed a petition for divorce in accordance with La. C.C. art. 103(2), alleging Tela's acts of adultery. Tela answered and reconvened seeking custody and child support. Trial was set for March 28, 2006, and in the interim, the parties were to share custody of the children.
On March 28, 2006, pursuant to an agreement the trial court granted Jonathan's petition for divorce under La. C.C. art. 103(2) and awarded joint custody of the children, with Jonathan as the primary domiciliary parent. Tela was given physical custody of her daughters on alternating weekends. Although not in the judgment, the parties agreed to Tela's custody on certain holidays and five weeks during the summer. Tela was also ordered to pay child support. A written "Consent Judgment" was signed on May 5, 2006.[1]
Following the divorce Tela and Joshua Hammett married and now have an infant son. Joshua has two sons by a prior marriage who often stay with Joshua and Tela.
Each party swapped contempt rules with Jonathan seeking to accrue support arrearages and Tela complaining that she was denied visitation. Another consent judgment was rendered setting the amount of past due support and reducing Tela's support obligation. On July 17, 2007, Jonathan filed the present rule for back due child support and to suspend Tela's visitation rights based upon his belief that she was not providing adequate housing. Specifically, Jonathan alleged that Tela was living in a travel trailer that lacked sewerage or water. Jonathan requested that Tela's visitation be suspended until such time that she could provide adequate housing and sleeping arrangements for the children.
The trial court held a hearing on Jonathan's request for suspension of visitation on August 14, 2007. Jonathan, his sister, and Tela's mother testified that when the children return from visiting with their mother, their breath smells bad, their hair is matted, and their clothes are dirty. We note that Tela and her mother are estranged and do not communicate with each *1159 other. Also, Tela's mother had no recent contact with the children. Furthermore, Jonathan and his sister testified that on the weekend before this trial, Tela took the children to the lake, and they were severely sunburned on their faces. Jonathan and his sister also testified that on another occasion the children returned from visiting Tela with multiple insect bites. Photographs of both the sunburns and insect bites were admitted into evidence.
The court also heard testimony from Robert Weltz, a private investigator hired by Jonathan. Weltz testified that he observed Tela on ten days between June 6, 2007, and the last week or two of July 2007. He did not relate particular dates or specific times of his observations and out of the ten days he observed, some were only drive-bys or spot checks. Weltz testified that he only witnessed the children and Tela at her actual home in Cotton Valley on one occasion, and he concluded that the house in Cotton Valley looked like it was not being lived in. He did see the children at a travel trailer at Tela's husband's wrecking service in Minden. Weltz further testified that he witnessed Tela leave the children unattended in her vehicle twice in one day. First, she stopped at the Cotton Valley Post Office and went inside to get mail then took it to the wrecking service's office in Minden. Weltz stated that in Minden the children were left in the vehicle alone for three to eight minutes and that it appeared that the vehicle was not running, i.e., the air conditioner was not on. The detective did not know if the house or trailer had utilities.
Tela and her husband testified that the children were sunburned after a day on the lake, even though Tela had been applying sunscreen on them throughout the day; their home in Cotton Valley had adequate sleeping arrangements and air conditioning; and, they only stayed at the travel trailer occasionally when Joshua was on call at night. Tela and her husband also stated that the travel trailer had sewerage and water service.
After hearing the witnesses, the trial court rendered its judgment that all visitation previously afforded was terminated and visitation would take place at the D & D Farm Supply in Minden every other Saturday for a period of three hours under the supervision of Dan Dooly.[2] It is from this judgment that Tela now appeals.

Discussion
Although the rule was filed by Jonathan to suspend visitation, the trial court, in effect, revoked the previous joint custody award. Implicitly, the father was given sole custody of the two children with the mother having limited and supervised visitation.
Because the trial court modified or revoked the stipulated joint custody judgment, the burden of proof on Jonathan was to show (1) a material change in circumstances since the original joint custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731; Hoskins v. Hoskins, 36,031 (La.App. 2d Cir.04/05/02), 814 So.2d 773.
The trial court is vested with vast discretion in matters of child custody and visitation and its determination will not be disturbed absent a clear showing of abuse. Gaskin v. Henry, 36,714 (La.App. 2d Cir.10/23/02), 830 So.2d 471. If the trial court's factual findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been *1160 sitting as the trier of fact, it would have weighed the evidence differently. Flanagan v. Flanagan, 36,852 (La.App. 2d Cir.03/05/03), 839 So.2d 1070.
The best interest of the child is the sole criterion for determining a noncustodial parent's right to visitation. Hoskins, supra. The trial court has the inherent power to determine a child's best interest and to tailor custody orders, including visitation, in a manner that minimizes risk of harm to the child. Gaskin, supra.
The question of visitation is always open to change when the conditions warrant it. Gaskin, supra. When there have been restrictions placed on a noncustodial parent's visitation rights, those restrictions should be lifted when it is shown to be in the child's best interest. Id. The trial court's order restricting visitation did not afford Tela any means to rectify the problems noted and restore her normal visitation (i.e. proof of completion of a parenting class and the provision of adequate housing).
Louisiana Civil Code art. 134 provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interests of the child.[3] The consideration of all relevant factors under Article 134 should be followed in actions to change custody, as well as in those to fix custody initially. La. C.C. art. 134, comment (d).
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Pender v. Pender, 38,649 (La.App. 2d Cir.05/12/04), 890 So.2d 1; Flanagan, supra. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Hoskins, supra.
In the case sub judice, the trial court determined that "this mother's got no business with having custody of these children *1161 at all." The court's determination was based upon the following: (1) the father testified that the children would return from their weekend visitations with bad breath, unkempt hair, using bad language, and wearing dirty clothes; (2) Weltz's testimony that he observed Tela leave the children unattended in her vehicle twice for approximately three to eight minutes and that he did not actually see if she properly secured the children with a seatbelt or a child seat; (3) the court's inability to determine where Tela was living and it appeared that Tela and the children would stay in a travel trailer at her husband's wrecking service; (4) child protection services had investigated a complaint concerning Tela's accommodations and the results of that investigation were still pending; and (5) the sunburn and insect bites that the children received while visiting Tela.
Tela contends, however, that the trial court's ruling was manifestly erroneous, since the trial court failed to consider all relevant factors, as set forth in La. C.C. art. 134, when determining the best interest of the children and, further, because the judgment requiring supervised visitation is unlimited in duration.
The trial court's ruling was based upon certain isolated incidents that arguably were not the best course of action on Tela's part in attending to her daughters' needs. Nevertheless, the children's medical and dental needs are being met, and Tela is paying child support to help her ex-husband meet these and other needs. There was no evidence that when Tela had the children they always stayed in the trailer at the wrecking yard. The record instead shows that this occurred only occasionally, and they pretended it was a camping trip. Although Tela's home needs to be better kept, it was not shown to be detrimental to the children's well being. The evidence was specious at best and clearly did not show a material change in circumstance such as to warrant the revocation of joint custody nor would it support the severe restrictions of Tela's visitation with the children. The trial court erred in finding that Jonathan met his burden of proof for a change in joint custody or in limiting Tela as a noncustodial parent to supervised visitation with the children.
We reverse the trial court's judgment and reinstate the original judgment giving Tela custody every other weekend. The original judgment awarded custody to Tela every other weekend but did not mention holidays or summer. The parties apparently agreed to this in a custody implementation plan which is not in the record. The trial court is ordered to specifically set forth these custodial times. We remand to the trial court for implementation in accordance with this opinion.

Conclusion
For the foregoing reasons, we reverse and remand for further proceedings in accordance with this judgment.
REVERSED AND REMANDED.
NOTES
[1] A custody implementation plan was referred to in the written judgment but was not attached to the judgment or found in the record.
[2] The court left the supervisor to be chosen by the parties.
[3] According to La. C.C. art. 134, the non-exclusive list of relevant factors to be considered by the trial court in determining the best interests of the child may include the following:

(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.