## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-81

TRENT HARVEY

VERSUS

KELLY (SINGLETON) HARVEY

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 78,644, DIV. B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED.**

Donald W. Martin
2207 Parkdale Drive
Kingswood, TX   77330
(281) 358-7065
COUNSEL FOR DEFENDANT/APPELLANT:
    Kelly (Singleton) Harvey

E. Grey Burnes Talley
Post Office Box 650
Alexandria, LA   71309-0650
(318) 442-5231
COUNSEL FOR DEFENDANT/APPELLANT:
    Kelly (Singleton) Harvey

**Scott Westerchil**
**301 South 3rd Street**
**Leesville, LA   71446**
**(337) 238-0019**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Trent Harvey**

**AMY, Judge.**

In this custody dispute, the father alleged a change in circumstances and sought to change custody from shared custody with both parents having co-domiciliary status. After a trial, the trial court found that there was a change in circumstances that warranted a change in custody and ordered that the parents have joint custody with the father having domiciliary parent status. The mother appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, Trent Harvey, and the defendant, Kelly Grady,[1] have one child together, Terryn Harvey. Mr. Harvey and Mrs. Grady separated in 2007, soon after Terryn's birth. Mrs. Grady took Terryn with her to Texas. As germane to this appeal, the parties eventually entered into a stipulated custody agreement that provided for joint custody with Mrs. Grady having domiciliary custody and provided a visitation schedule. Mr. Harvey sought a change in custody in 2009, which Mrs. Grady opposed. After a hearing, the trial court found that both Mr. Harvey and Mrs. Grady were good parents who have good homes, love their child, and pose no danger to her. However, the trial court found that the "whole factual scenario of this case is replete with a lack of communication by both parties" and changed custody to shared custody with co-domiciliary status and ordered that each parent have physical custody of Terryn on a two-week/two-week basis. Mrs. Grady appealed, and in *Harvey v. Harvey*, 10-1338 (La.App. 3 Cir. 3/9/11), 56 So.3d 467, *writ denied*, 11-719 (La. 4/29/11), 62 So.3d 117, a panel of this court affirmed the custody determination but vacated the trial court's finding of contempt against Mrs. Grady.

---

[1] Kelly (Singleton) Harvey has remarried and is now known as Kelly Grady.

In 2011, Mr. Harvey filed another rule to modify custody. Therein, Mr. Harvey requested that the trial court grant him sole custody of Terryn with Mrs. Grady having visitation or, in the alternative, joint custody with Mr. Harvey being designated as the domiciliary parent. After a trial, the trial court found that, because Terryn was approaching school-age, there was a material change in circumstances. Further, although the trial court noted that it was more probable that Mrs. Grady's home was "perhaps the most stable considering the family unit and Terryn's sister,"[2] that Mrs. Grady's conduct in responding to events since the modification of custody has continued to create problems, rather than facilitate a close and continuing relationship between Mr. Harvey and Terryn. Therefore, the trial court found that it was in Terryn's best interest that the parties have joint custody, with Mr. Harvey being designated as the domiciliary parent and Mrs. Grady having "liberal physical custody."

Mrs. Grady appeals, asserting as error that:

1) It was error for the Trial Court to make Trent Harvey the domiciliary parent when it found Kelly Grady's home to be the most stable environment.

2) It was error for the Trial Court to use an award of custody to punish the domiciliary parent by changing the domiciliary parent, rather than to place the child based solely on the best interest of the child.

## Discussion

*Change of Custody*

In reviewing custody determinations, the trial court's decision is to be afforded great deference on appeal and will not be disturbed absent an abuse of

---

[2] According to the record, Terryn has two younger half-siblings—Mr. Harvey's daughter, Tinsley, and Mrs. Grady's daughter, Carly. We note that "Carly" is also spelled "Carlie" in the record.

discretion. *Martin v. Martin*, 11-1496 (La.App. 3 Cir. 5/16/12), 89 So.3d 526. Louisiana Civil Code Article 131 directs that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." In this vein, custody cases are to be decided upon their own particular facts and circumstances, keeping in mind that the paramount goal is to do what is in the best interest of the minor child. *Newcomb v. Newcomb*, 01-1530 (La.App. 3 Cir. 3/6/02), 810 So.2d 1269 (quoting *Hebert v. Blanchard*, 97-550 (La.App. 3 Cir. 10/29/97), 702 So.2d 1102).

In cases where the trial court has previously entered a considered decree of permanent custody, "the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986).

A review of the record indicates that the trial court had previously awarded the parties shared custody with co-domiciliary status, with each parent enjoying two weeks of physical custody. There was testimony that the distance between the parties' respective residences is several hours. The record further indicates that Terryn is approaching school age and that, because of the distance between the parties, this physical custody schedule is no longer feasible. Mr. Harvey testified that he had investigated a private school in Leesville and that he was informed that Terryn could not attend based on his current physical custody schedule. The trial court found that, based on these circumstances, the determination of custody must be revisited. Neither party contests this issue, and we find that these circumstances

3

meet the heightened standard for review of a considered custody decree delineated in *Bergeron*. *See Silbernagel v. Silbernagel*, 10-267 (La.App. 5 Cir. 5/10/11), 65 So.3d 724.

*Application of Best Interest Factors*

Having found that the *Bergeron* standard was met, the trial court then had to determine what was in Terryn's best interest. *See Merriman v. Merriman*, 05-1435 (La.App. 3 Cir. 5/3/06), 930 So.2d 235. In so doing, "[t]he court shall consider all relevant factors in determining the best interest of the child," including:

> (1) The love, affection, and other emotional ties between each party and the child.

> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (6) The moral fitness of each party, insofar as it affects the welfare of the child.

> (7) The mental and physical health of each party.

> (8) The home, school, and community history of the child.

> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

> (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

> (11) The distance between the respective residences of the parties.

> (12) The responsibility for the care and rearing of the child previously exercised by each party.

La.Civ.Code art. 134.

In its reasons for judgment, the trial court opined that:

> The Court, in considering the 12 factors of Article 134 of the Civil Code, finds that both these parents are good parents who genuinely love their child and the child loves them. The Court concludes that it is more probable that the family home with Kelly is perhaps the most stable environment considering the family unit and Terryn's sister. That is not to say, however, that a single parent cannot provide a stable home for a child. On the contrary, that is exceedingly common in our present day society.
>
> The underlying principle of joint custody is that the child should enjoy the maximum contact with each parent which is possible under the circumstances. When this case started, Kelly [Grady] was the primary domiciliary parent with visitation to the father, Trent [Harvey], but things didn't go very well. After this, in February 2011, the Court modified custody to co-domiciliary parents and a shared custody plan hoping things would get better. The Court concludes that Kelly's conduct in responding to events since the modification of custody continues to create problems between her and Trent which tends to frustrate, rather than facilitate a close and continuing relationship between Terryn and her father. The Court, therefore, finds that it is in the best interest of Terryn that there be joint custody with the father, Trent Harvey, as the primary domiciliary parent, subject to liberal visitation with the mother, Kelly Grady.

One of Mrs. Grady's assignments of error concerns the trial court's judgment in light of its determination that Mrs. Grady's home was "perhaps the most stable environment." She complains that the trial court erred in determining that Mr. Harvey should be the domiciliary parent because of this finding.

We find no merit to Mrs. Grady's contention in this regard. First, we note that:

> The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Moreover, the

factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.

*Cooper v. Cooper*, 43,244, p. 6 (La.App. 2 Cir. 3/12/08), 978 So.2d 1156, 1160 (citations omitted).

Our review of the record indicates that, although the trial court found that Mrs. Grady's home was "perhaps the most stable environment," it did *not* make a finding that Mr. Harvey's home was an unstable environment. Of particular import, at the time of trial, both parents had had equal physical custody, as well as co-domiciliary status, for more than two years. The trial court heard evidence concerning Mr. Harvey and Mrs. Grady's respective living situations, financial situation, and work obligations. There was testimony about the family members involved in Terryn's life at both Mr. Harvey and Mrs. Grady's houses, including grandparents, stepparents and half-sisters. The record supports a conclusion that Terryn has a positive relationship with her extended family. Further, the trial court heard evidence concerning Terryn's daycare and educational situation in the parties' respective care.

Additionally, the parties testified at length about their ability to communicate about Terryn's needs and to mutually resolve issues concerning Terryn's health and well-being. Much of the testimony revolved around Mr. Harvey's efforts to have tubes placed in Terryn's ears in order to alleviate her ongoing chronic ear infection problems.[3] Other testimony concerned statements

---

[3] Notes in Terryn's medical records indicate several references, from both Terryn's Texas pediatrician as well as her Louisiana doctors, to the possibility of ear tubes starting in the late summer/early fall of 2009. According to the record, Mr. Harvey eventually obtained a referral and took Terryn to an ENT in Louisiana in August of 2010 and attempted to impress upon Mrs. Grady that the ENT felt that the surgery should be done "as soon as possible." The record also indicates that Mrs. Grady attempted to obtain Terryn's Louisiana medical records in late August and early September of 2010 so that Terryn's Texas doctors could review them. The record

that Terryn made concerning the actions of her parents.[4]

Based on our review of the record, we find no abuse of discretion in the trial court's determination that Mr. Harvey should be the domiciliary parent. The trial court was "not bound to give more weight to one factor over another[.]" *Cooper*, 978 So.2d at 1160. The record contains sufficient evidence to support a conclusion that both Mr. Harvey and Mrs. Grady's homes and family environment would be appropriate for Terryn, and that Mr. Harvey and Mrs. Grady are both good parents to Terryn. Given these circumstances, the trial court chose to place more weight on the parties' respective abilities to foster a close and continuing relationship with the other parent. We find no error in the trial court's conclusion that Mrs. Grady's actions in responding to issues has tended to create problems, rather than facilitate a close and continuing relationship between Terryn and Mr. Harvey.

Mrs. Grady's assignment of error in this regard is without merit.

*Change of Custody as a "Punishment"*

Mrs. Grady also contends that the trial court erred in appointing Mr. Harvey as the domiciliary parent in order to "punish" her. In support of this argument, Mrs. Grady cites *Fulco v. Fulco*, 254 So.2d 603, 606 (La.1971), for the proposition that "[t]he purpose of a custody determination is not to punish a parent for any [p]ast misconduct, it is rather to serve the best interests of the children of the marriage."

---

indicates that tubes were placed in Terryn's ears in May of 2011, more than six months after Terryn's initial visit to the ENT.

[4] According to Mrs. Grady, Terryn stated that Mr. Harvey told her that he was going to shoot Mrs. Grady. According to Mr. Harvey, Terryn told him that a policeman came and put "bracelets" on Mrs. Grady and took her away. A psychologist retained by Mrs. Grady, Dr. Sally Thigpen, noted that when she was observing Terryn, Terryn told her a story about putting her finger in a possum's mouth and that the possum was "nice." Dr. Thigpen opined that "Terryn has a very lively imagination and that she can create stories and that she is that – of that age." Based in part on Dr. Thigpen's observation, the trial court found that there was no danger.

We find no merit to this contention. Although a custody decree may not be used as a tool to regulate human behavior, *see Cleeton v. Cleeton*, 383 So.2d 1231 (La.1979), our review of the record indicates that the trial court did not do so. Mrs. Grady points to the trial court's determination that her reaction to events which occurred since the trial court changed the custody arrangement in 2010 tended to create problems rather than resolve them in support of her contention that the trial court appointed Mr. Harvey as the domiciliary parent in order to punish her or regulate her behavior. After carefully reviewing the record, we do not reach that conclusion. As previously discussed, the trial court considered the best interest factors delineated in La.Civ.Code art. 134, and determined that appointing Mr. Harvey as the domiciliary parent was in Terryn's best interest. Part of this determination was that Mrs. Grady's responses to issues did not facilitate a close and continuing relationship between Terryn and Mr. Harvey. This is an appropriate determination to make under La.Civ.Code art. 134 and the trial court was entitled to make such a determination.

Mrs. Grady's assignment of error in this regard is without merit.

### DECREE

For the foregoing reasons, we affirm in all respects the judgment of the trial court signed on July 2, 2012, granting the parties, Trent Harvey and Kelly Grady, joint custody of Terryn Harvey, and designating Mr. Harvey as domiciliary parent. Costs of this appeal are assessed to the appellant, Kelly Grady.

**AFFIRMED.**