STEWART, J.
| following an evidentiary hearing on a rule for custody and visitation, the trial court awarded the parties joint custody and found it to be in the best interest of their two children that the plaintiff, William Chris McMellon (“Chris”), be designated the domiciliary parent with the defendant, Britania Gail Sparks McMellon (“Gail”), granted specified periods of physical custody as provided in the judgment. Asserting that Chris did not prove a material change in circumstances since their consent judgment rendered August 11, 2009, and that the trial court erred in its best interest determination, Gail now appeals. Finding no abuse of the vast discretion afforded the trial court in custody matters and that the record supports the trial court’s judgment, we affirm.
*771 PROCEDURAL HISTORY and FACTS
Chris and Gail married on August 9, 2002. They have two children. Jacob, Gail’s son from a prior relationship, was born in 1999 and was adopted by Chris during the marriage. In 2003, a daughter, Jamie, was born of the marriage.
Chris filed for divorce on June 9, 2009, and separate judgments granting the divorce and awarding the parties joint custody were rendered on August 11, 2009. The custody judgment designated Gail as the domiciliary parent with visitation for Chris as specified in a Joint Custody Implementation Plan. Chris was ordered to pay child support in the amount of $724.24 per month, with recalculation quarterly based on any bonuses received by him, and to pay half of the children’s expenses for sports and ^school activities. Gail was ordered to maintain medical insurance on the children, with the parties each paying half of noncovered medical expenses.
By the time of the divorce, Chris had moved to Tyler, Texas, and remarried. His wife is referred to as “Cordilia” in the record. Gail remained in Louisiana with the children. She remarried in December 2011; her husband is Kenneth “Bubba” Timmons.
On March 9, 2011, alleging a “drastic change in circumstances,” Chris filed a petition to modify custody and to obtain temporary custody under La. C.C.P. art. 3945. In short, the main basis for the change in custody was the instability in Gail’s and the children’s lives. The petition alleged that Gail had moved with the children a number of times, that they were doing poorly and failing in school, and that she had threatened to abscond with the children so that Chris would not see them again. The petition included allegations about Gail partying, dating different men, and leaving the kids with a friend on weekends so that she could go out. The petition alleged that Gail had a convicted sex offender living with her and the children on weekends. It included an allegation that Jamie was being mentally, physically, and emotionally abused by her brother Jacob and another boy, Caleb, who was living with them. Additional complaints were that Jamie had to share a room with Gail and that Gail allowed Jacob to stay home alone even though a young boy had recently been murdered nearby.
Based on the allegations of the petition, the trial court signed an order naming Chris as the domiciliary parent. Gail was granted reasonable ^visitation with the stipulation that the convicted sex offender would not be present around the children. A hearing date was set for Chris’s petition.
On March 18, 2011, Gail filed a motion to dissolve the temporary custody order, to increase child support, and for contempt. In response, Chris filed an amended petition, again complaining of Gail’s “erratic behavior” and alleging her inability to provide a safe, caring, and nurturing environment for the children. Chris requested sole custody of the children with restricted, supervised visitation for Gail and a recalculation of child support. By ex parte order of March 30, 2011, the trial court granted Chris temporary custody of the children, with Gail having supervised visitation. However, following a short hearing on March 31, 2011, the trial court withdrew the ex parte order and reinstated the joint custody order naming Chris the domiciliary parent with Gail having unrestricted visitation.
On September 15, 2011, on a motion by Chris, the trial court ordered the appointment of a mental health professional to evaluate the parties and the children. An interim judgment continuing the joint custody arrangement with Chris as the domi *772 ciliary parent and specified visitation for Gail was rendered on September 10, 2012.
On May 16, 2013, after failing to return the children to Chris’s custody as required by the interim order, Gail filed a petition for temporary custody. She alleged that on May 8, 2013, Chris punished Jamie by whipping her with a belt and / or spanking her with his hand for not writing her spelling words. Gail alleged that the punishment left welts and bruises on Jamie’s legs and buttocks. . She alleged that the children were in danger |4of immediate and irreparable harm if left in Chris’s custody. Chris filed an opposition in which he admitted that he spanked the minor child for her disobedience, that he disciplined her in the same manner as the parties had during their marriage, and that he informed Gail of the incident the night it happened. After hearing from the court-appointed expert, Leigh Ann O’Brien (“O’Brien”), LCSW, the trial court denied Gail’s petition. Another interim order continuing the same custody arrangement was signed on July 8, 2013. Thus, the children have remained in Chris’s custody, with Gail having visitation, since approximately March 2011.
The custody matter came before the trial court for a full evidentiary hearing on October 14, 2013, and November 8, 2013. Testimony was provided by O’Brien, Chris, Gail, and Officer Joshua Cooper of the Plain Dealing Police Department. Without reservation, O’Brien recommended that Chris be named the domiciliary parent. Numerous exhibits were introduced into evidence. Most compelling were the children’s school progress reports from February 8, 2011, showing their poor performance while attending North DeSoto Elementary School while in Gail’s custody and the two reports by O’Brien, which concerned her evaluation of the parties and her investigation of the spanking incident. Numerous photographs and audio-taped conversations between Chris and Gail were also introduced. The trial court judge also spoke with the children in chambers.
After taking the matter under advisement, the trial court issued its permanent custody ruling on November 20, 2013, finding it to be in the | Schildren’s best interest that -Chris be designated the domiciliary parent. A judgment designating Chris the domiciliary custodian and specifying Gail’s visitation under a joint custody arrangement was signed on January 27, 2014. Gail’s appeal followed.
APPLICABLE LAW
The original custody decree entered at the time of the parties’ divorce was a stipulated or consent decree, rather than a considered decree based upon evidence as to parental fitness. Because Chris sought to modify custody established by consent of the parties, he had the burden of proving (1) a material change in circumstances since the original custody decree and (2) that modification of custody would be in the best interest of the children. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Cooper v. Cooper, 43,244 (La.App.2d Cir.3/12/08), 978 So.2d 1156.
The best interest of the child is the primary consideration in any custody matter. La. C.C. art. 131; Chandler v. Chandler, 48,891 (La.App.2d Cir.12/13/13), 132 So.3d 413. All relevant factors must be considered in determining the child’s best interest. La. C.C. art. 134; Atkins v. Atkins, 47,563 (La.App.2d Cir.09/26/12), 106 So.3d 614. Each child custody case is to be decided based on the particular facts, circumstances, and relationships. Chandler, supra; Atkins, supra. The trial court is not required to provide a literal articulation of each of the factors of La. *773 C.C. art. 134 in reaching its conclusion regarding the best interest of the children, nor is the trial court required to specifically explain its weighing and balancing of the Article 134 factors. Chandler, supra.
| (¡Because the trial court has vast discretion in deciding child custody matters, its findings in such matters will not be disturbed on appeal absent a clear showing of an abuse of discretion. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Chandler, supra.
REVIEW OF EVIDENCE and DISCUSSION
Chris lives in Texas where he manages “United Built” Homes in Tyler. Since Chris obtained interim custody of the children, they have attended school in Lindale. At the time of the hearing, Jacob was in the eighth grade, and Jamie was in the fourth grade. He testified that both children had to attend summer school in order to get caught up. He testified that their grades had improved and that Jacob was now making A and B grades. Either Chris or Cordilia helps with the children’s homework each evening. Chris testified that the children have a good relationship with Cordilia and that the family does many activities together. . Chris testified that he started attending church with the children because he wants to provide them with guidance for them to grow into the people he wants them to be.
Chris testified that his relationship with Gail has been strained at times. The audiotapes introduced into evidence support his testimony. He noted that Gail never returned paperwork he needed to enroll the children in medical insurance provided by his job. He testified that he has problems with Gail’s judgment. He noted that she had the children around someone who was a convicted sex offender and that one of her best friends has a marijuana leaf tattooed on her back. In summary, his main concerns were |7the children’s academic performance, Gail’s partying, and the people Gail had the children around.
When questioned by Gail’s counsel, Chris admitted that Gail was in the process of attempting to get an increase in child support when he filed his petition to modify their custody agreement. He also admitted that he did not attend church while married to Gail.
At the time of trial, Gail was not employed. She testified that she was attending school to become a registered nurse. Gail testified about her changes in residence following the parties’ divorce. She stated that she and the children stayed with a friend in Stonewall for three months, then rented a house there where they lived for two years, part of which was with a roommate and her son, Caleb. Gail denied any abuse of Jamie by Caleb and Jacob as alleged by Chris. She claimed they merely fought like siblings.
In October 2011, she moved to Plain Dealing to marry Bubba. Gail admitted that Jamie had to share a room with her in the various homes in which they had lived. However, Jamie now has her own room at the house in Plain Dealing but chooses to sleep with her when Bubba is not there. The record indicates that Bubba is away on his job for most of the year.
Gail admitted that she may have told Chris she would move in with her mother, who lives in another state, if he did not pay support. She also admitted to having “casual conversations” around the children about moving again but claimed she meant to Benton or Bossier with Bubba. She also admitted telling Chris that she would not allow visitation with the children if he did not pay support, but she denied ever actually denying him ^visitation. One of the audiotapes introduced was of a conver *774 sation concerning this very issue. Gail demanded that Chris have the support check when she dropped off the children for visitation, while he insisted he could not have it until the end of the weekend when they exchanged the children after the visit.
Gail testified that she does not get along with Cordilia and attributed her feelings to trouble caused by Cordilia before the end of her marriage to Chris. She also testified that she does not get along with Chris and that they text rather than talk as often as they used to. She was not concerned about things she said on the audiotapes. She explained that people say things when they are mad and that Chris knows how to “push her buttons.” When questioned about her sessions with O’Brien, Gail could not recall any specifics of what was discussed. Yet, she could recall the precise date, which she claimed was the only date, that the children were home with her when the registered sex offender was present. Her testimony indicated that Jacob may have been Facebook friends with the man, but Gail testified that he never lived with her and the children as alleged by Chris in his petition, that she never had a sexual relationship with him, and that she has had no contact with him since learning of his sex offender status. Gail admitted that after the divorce she did go out and drink but that 99 percent of the time this occurred when the children were with Chris. She denied leaving the children so that she could go out on dates. However, she did admit to allowing Jacob to stay home alone after school until she got off work.
IsRegarding the children’s school performance, Gail testified that Jacob has always struggled as a student. She admitted to changing their school during the school year on November 1, 2011, when she moved to Plain Dealing. She has never visited the children’s school in Lindale. She testified that she got their grades when they started attending there, but she could not recall what they were. She did testify that she was “happy” that they had improved.
Officer Cooper testified that he responded to a complaint from Gail in May 2013 concerning bruises on Jamie. He took photos of the bruises, which were entered into evidence, and he testified that Jamie reported that her father whipped her with a belt because she did not “write lines.” Because the incident occurred in Texas, he advised Gail to contact authorities in that state.
O’Brien met with both children on Sunday, May 19, 2013, about the incident and prepared a report for the trial court dated May 21, 2013. Because of the incident, Gail had refused to return the children to Chris and thereby kept them out of school for a week. According to O’Brien’s report, Jamie told her that Chris did spank her but that the bruises were not from him. She reported that she was not afraid of her father and that he was not abusive. O’Brien’s report expressed concern about Gail’s “emotional well being” and “her inability to make appropriate decisions for the best interest of her children.” O’Brien’s report also described Gail as being erratic in making decisions for the children. At trial, O’Brien testified that both children told her that Gail spanks Jamie more often than Chris does.
| min her testimony, as well as her April 2, 2012, report to the trial court concerning her evaluation of the parties and the children, O’Brien recommended Chris as the permanent domiciliary parent. O’Brien opined that many of the problems stem from Gail being “very hateful” about Cor-dilia. O’Brien noted that Gail did not want to communicate with Cordilia and that she blamed all the problems she was having with Chris on Cordilia. Gail reported in *775 their session that she did not respect Cor-dilia and would not work with her on any level. According to O’Brien, both children reported that Gail says horrible things about Chris and Cordilia in their presence. However, neither Chris nor his wife talks badly about Gail in front of the children.
O’Brien noted that the children were emotionally struggling with their parental situation and that they are too young to know what is in their best interest where custody is concerned. For instance, Jacob reported that Gail does not have rules like his father does. O’Brien recommended that they not be called to testify, though she stated that both children expressed a preference during their sessions to live with their father.
When questioned about the factors of La. C.C. art. 134, O’Brien testified that the majority favored Chris over Gail. She testified that Chris is able to provide love and affection for the children as well as make sound, age-appropriate decisions for them. He attends church with the children and places a great emphasis on school. For instance, Gail refused to hold Jamie back in third grade as recommended by the school she attended while in Gail’s custody. The child then had to repeat the fourth grade in Texas | nbecause she was not adequately prepared for promotion to that grade. O’Brien testified that Chris provides for the children’s material needs, while Gail failed to provide medical insurance during the evaluation process. O’Brien found that Chris had been providing a stable, consistent environment for the children with structure and boundaries. She noted that he has a stable family unit, while Gail failed to establish permanence while the children were with her. We observe that even though she has remarried, the record indicates that her husband is away for the majority of the year. O’Brien believed that Chris has greater moral fitness and that he would encourage the children’s relationship with Gail, whereas she did not believe that Gail would encourage the children’s relationship with their father. She noted that the children were attending excellent schools and that their grades were improving. O’Brien found that they were thriving in their environment with Chris. In summation, O’Brien determined that Chris is the parent best able to act in the best interest of the children, whereas Gail lacks stability and does not take their academics seriously.
Based on the testimony and evidence entered into the record, the trial court found it to be in the children’s best interest that Chris be designated the domiciliary parent. From our review of the record, we find no abuse of discretion in the trial court’s best interest and custody determination. Chris established a material change in circumstances since the parties’ consent decree naming Gail the domiciliary custodian. Gail’s erratic lifestyle following the parties’ separation and divorce, which resulted in the children moving homes at least three times, living with other people, and changing | ,2schools during the school year when Gail moved to Plain Dealing are material changes in circumstances shown by the record. The children’s poor school performance while in Gail’s custody and their improved performance since their father obtained interim custody is another significant factor indicating a material change in circumstances. The stability of the children’s environment is a factor to be considered in evaluating a custodial change. Broadway v. Broadway, 623 So.2d 185 (La.App. 2d Cir.1993). The record clearly shows that Chris has been providing the children a stable environment in which they are thriving and that it is in their best interest *776 to- remain in his care as the domiciliary-parent. '
We find no merit to Gail’s argument that this matter is analogous to that in Cooper v. Cooper, supra, wherein this court reversed the trial court’s judgment, which revoked the joint custody consent decree and severely limited the mother’s visitation to a supervised three-hour period every other Saturday. Finding the father’s complaints to involve isolated incidents and the evidence to be specious, this court remanded for reinstatement of the original consent judgment, which gave the mother custody every other weekend. Unlike the trial court’s judgment in Cooper, supra, the judgment at issue allows the present parties to continue to share joint custody of the children. As previously stated, each case is decided on its own particular set of facts and circumstances. Here, the facts and circumstances, including the evaluation of the parties, stepparents, and children by the court-appointed expert, support the trial court’s judgment.
| ^CONCLUSION
For the reasons stated in this opinion, we affirm the trial court’s judgment awarding the parties joint custody of the children, designating William Chris McMellon as the domiciliary custodian, and awarding Britania Gail Sparks McMel-lon specified periods of visitation as set forth in the judgment. Costs of appeal are assessed against the appellant.
AFFIRMED.